### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

# AT MILLEDGEVILLE,

## MAY TERM, 1855.

Present—JOSEPH H. LUMPKIN, ⎫
EBENEZER STARNES, ⎬ *Judges.*
HENRY L. BENNING. ⎭

---

No. 1.—FRANCIS S. SUTTON, plaintiff in error, *vs.* JOHN N. CHENAULT, defendant in error.

[1.] The Act of February 16th, 1852, requiring, that from and after the 1st day of June thereafter, all wills and testaments of personal property should be attested by three or four credible witnesses, and declaring that all laws of force in this State prescribing the mode of proof of devises of personal property, shall be extended to wills of personal property, applies to and controls the proof of a will of personal property, which had been executed before the passage of that Act—the testator having died after the same had gone into effect.

Caveat, &c. in Lincoln Superior Court. Tried before Judge ANDREWS, October Term, 1854.

The questions made in this case arose upon a caveat to the will of George N. Chenault, propounded for probate as to the per-

Sutton *vs.* Chenault.

:sonalty of the decedent. The will was dated 16th February, 1850. The decedent died 13th October, 1853. The will was attested by one witness, who testified that the testator stated that he thought two other witnesses were necessary, and named two individuals whom he intended to procure as witnesses. The decedent said, at the time, that that was his will. The will was caveated on the grounds—1st. That it was un-finished, and so considered by testator. 2d. That it was not attested as required by the Act of the Assembly of 1851-'2, requiring wills of personalty, after the 1st June, 1852, to be executed with the same solemnities required for bills convey-:ing real estate.

Upon the trial, the Court sustained both the grounds stated in the caveat, and so charged the Jury. Upon this charge error is assigned.

IRVIN & BARNETT, for plaintiff in error.

REESE; TOOMBS; T. W. THOMAS, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

On the 16th day of February, 1850, the last will and testa-.ment of George S. Chenault, which is now before us, was exe-cuted—one witness only attesting the same. On the 21st day .of January, 1852, an Act was passed by the Legislature of this State, requiring that from and after the 1st day of June, 1852, all wills and testaments of personal property should be .attested by three or four credible witnesses, and declaring that :all laws of force in this State prescribing the mode of proof as -to devises of real estate, should be extended to wills of person-·al property.

On the 30th day of October, 1852, George S. Chenault ·died, and the instrument now under consideration has been offered for probate, as a testamentary disposition of his per-.sonal estate.

The question presented by this state of facts is, whether or

Sutton *vs.* Chenault.

not the Act just mentioned is to regulate the mode of proof" as to this instrument; that is to say, whether it is to be con-- trolled by the law, as it existed at the execution of the will, or at the death of the testator.

In similar cases, there seems to have been some conflict of' opinion among Judges.

In the case of *Gilmore vs. Shorter*, (2 *Mod.* 310,) where a special verdict was found upon the Statute of Frauds, which enacts, that from and after the 24th day of June, in the year 1677, no action shall be brought to charge any person upon any agreement made in consideration of marriage, &c. unless such agreement be in writing; and the case being upon a bare promise, without writing, judgment was given for the plaintiff, as "it could not be presumed that the Act had a retrospect to take away an action to which the plaintiff was then entitled; for if a will had been made before the 24th day of June, and the testator had died afterwards; yet, the will had been good, though it had not been in pursuance of the Statute."

The case of *Ashburnham vs. Bradshaw* (7 *Mod.* 239,) was upon a devise made before the Statute of *George II.* avoiding. devises to charitable uses. The testator died after the Statute was passed. Ten out of the twelve Judges held that the land would still pass under the will; but they gave no reasons for their opinions. .

And in the case of *Downs vs. Townsend*, (*Ambler*, 290,) Lord *Hardwicke* is reported to have said, that "the general rule as to testaments is, that the time of the testament, and not the testator's death, is regarded."

Probably, basing their opinions upon the authority of these cases, other and more modern Courts have adopted the rule, that the mode of proof must be regulated by the law of force at the time the will is executed. But in all the cases to which we have referred, it seems likely that the Courts had in mind the rules which control devises of real estate, and were influ-- enced by these. The *dictum* in the first was hastily an- nounced by way of illustration, and without reason assign .
The second was a case of real estate. In the third, it is s

that Lord *Hardwicke,* at the time, was speaking of the intention of a testator as expressed in a specific bequest, and had no reference to the execution of a will, nor the time from which it should take effect. *Elcock's Will,* (4 *McCord,* 39.)

However this may be, a distinction obtained in the English Courts between wills of real and personal property, out of which rightly sprung, as we think, another rule. That distinction is this: "A devise of lands is considered not so much in the nature of a testament as of a conveyance, by way of appointment of particular lands to a particular devisee; therefore, it was established that a man can devise those lands only which he has at the date of such conveyance; and no after-purchased lands will pass, whatever words may be used; whereas, a will and testament will operate upon whatever personal estate a man dies possessed of, whether acquired before or since the execution of the instrument." (*Co. Litt.* 111.) This distinction was relied upon by Lord Chancellor *Northington,* in the case of *Attorney General vs. Hartwell,* (*Amb.* 45,) as a reason why the case of *Ashburnham vs. Bradshaw* (above cited) did not control the proof of a will of personal property; and it has been frequently recognized since. (*Harwood vs. Goodright, Cowp.* 90. *Lord Mansfield at* 1 *Saund.* 276, *f, note* 4 *to Duppa vs. Mayo. In Re. Elcock's Will,* 4 *McCord,* 39.)

As, therefore, all the personal estate which a man has at the time of his death passes by his will, and as a will of personal property is considered as having existence only from the death of the testator, and not from the time of its execution, it has been held, that the mode of proving such a will should be regulated by the laws of force at the death of the testator.

We prefer, upon principle, to adopt this view of the case, and to hold, that inasmuch as the Act in question was a law in force at the death of this testator, it applies to and controls the proof of his will.

It will be observed, that in this view of the case, no retroactive effect is given to the Statute. But it is held to apply, because of force at the time the instrument became the testator's will.

We may add, that the language of the Act favors this view of the subject; that prospective operation was given to it, and time thus allowed, as if for the purpose of affording an opportunity to those who had previously made their wills, to alter them, so as to meet the requirments of the, Act;

Let the judgment be affirmed.