## CHARLESTON

ELIZA ANN BARKER *et al v.* WILLIAM HINTON *et al.*

Submitted February 5, 1907.   Decided November 19, 1907.

1. WILLS—*Execution.*

The change in section 3135 (section 3, chapter 77) Code 1906, made by chapter 84, Acts of the Legislature of 1882, making the additional requirement that witnesses subscribing a will should do so

"in the presence of each other" applies only to wills executed, or re-executed, or republished or revived subsequent to the date of said act   (p. 643.)

2.  SAME.

The law existing at the date of the execution of a will disposing of real estate, and not that at the date of the death of the testator, governs the formalities of the execution and attestation thereof.   (p. 644.)

3.  STATUTES—*Construction.*

A statute should be construed so as to operate prospectively only, unlees the language is so clear as to preclude all questions as to the intention of the legislature.   (p. 645.)

4.  WILLS—*Execution.*

When a testator makes a will, formally executed according to the law existing at its execution, it would unjustly disappoint his right of disposition to apply to it a rule subsequently enacted, though before his death.   (p. 646.)

5.  WITNESSES—*Competency—Devise Under Will.*

A devisee or legatee who is not an attesting witness may be examined in support of the will like any indifferent person. (p. 650.)

Appeal  from Circuit Court, Summers County.

Bill  by  Eliza  Ann  Barker  against  William  Hinton and others.   Judgment for defendant, and plaintiff appeals.
                                               *Affirmed.*

T. G. MANN and GEO. E. PRICE, for appellant.

R. F. DUNLAP and T. N. READ, for appellees.

MCWHORTER, JUDGE:

On the 7th day of March, 1901, the following paper was presented in the county court of Summers county for probate, having been filed in the clerk's office of said court February 4, 1901, to-wit:

"In the Name of God Amen.

"I Avis Hinton of the County of Monroe and State of Virginia, being of sound mind and memory and considering the uncertainty of this frail and transitory life do therefore make publish and declare this to be my last will and testament That is to say

"First after all my lawful debts are paid and discharged

the residue of my estate  real  and personal  I  give bequeath and dispose of as follows to wit:

"To my three sons William  and  Joseph  and  Silas to be equal—my three sons to share equal at my death all  my interests in all lands in Monroe and  Mercer  to  be equally divided according  to the above  statement

"Also as *they* are  land  in Raleigh  and  Greenbrier Counties to be in consideration with the balance between my three sons to share  equal.

"My daughter Eliza Ann has had her legacy in  the West as her  share is there .she my daughter  is  not  to share only in the West according  to the above *arraingment* and *disiigna*tions.

"My three sons William  Joseph Silas to be  divided equally between them share and share alike.

"Likewise I make constitute and appoint  my son William and my brother Enos Gwinn  to  be  executors of this my last will  and  testament  hereby revoking  all former—— by me. made.

"In witness whereof I have  hereunto subscribed my name and affixed  my seal the fourth day of  February in the year of our Lord  one thousand eight  hundred and sixty two.

, her

"Avis   X   Hinton (Seal)

mark

" The above written instrument was subscribed by the said Avis Hinton in our  presence and acknowledged by  her to each  of  us  and at  the  same time  published and  declared the above instrument as subscribed  to  be  her last will and testament  and  *and*  we at the testa*tors* request  and in  her presence have  signed  our  names  as  witnesses hereto and written  opposite  our  respective  places of  residence  the fourth  day  of  February  One Thousand  Eight Hundred and Sixty Two

> "Robert Commack of Mercer County at present
> "George  W.  Brafford of Fayette County
> "Evan Hinton of Mercer County."

And the following  order was entered by said court admitting the above will to probate therein:   "West Virginia, in Summers County Court, March 7th, 1901:   The last will and testament of  Avis Hinton, deceased  filed in this office

February 4th, 1901, was this day presented in Court, and Robert Commack and Evan Hinton, subscribing witnesses thereto being each dead, their signature to said writing was proved by the oaths of E. H. Peck and Geo. W. Lilly, which being deemed by the Court, the best proof of said will obtainable, the same is deemed sufficiently proved and ordered to be recorded.

At the February rules 1905, Ann Eliza Barker filed her bill in equity in the circuit court of Summers county against William Hinton, Joseph Hinton and Silas Hinton alleging that Avis Hinton then a resident of Summers county died on the 22nd day of January, 1901, leaving surviving her as her only descendants distributees and heirs at law her children the said three defendants and the plaintiff, exhibiting a copy of the said paper and the order admitting it to probate as the last will and testament of Avis Hinton, and alleging that the said paper writing was not and is not the true last will and testament of the said Avis Hinton, deceased; that she never signed or executed the same in the manner required by law to make it a valid will; that neither the signature nor the body of said writing was in the handwriting of said Avis Hinton; that there was nothing in the record to show that the witnesses signed their names to said writing in the presence of each other, and in fact no legal evidence offered before said county court of the execution of said will by the said Avis Hinton; that there was not sufficient evidence to admit the alleged will to probate and that the action of the county court in so admitting it to probate was null and void; and praying that the said order of the county court be set aside and annulled and that a decree be entered declaring that said paper writing is not the last will and testament of the said Avis Hinton, and for such further relief as plaintiff might be entitled to.

The defendants filed their demurrer and answer, to which answer the plaintiff replied generally. The answer denied the material allegations of the bill; averring that the will was executed according to the requirements of the statute and was sufficiently proven to entitle it to be probated and recorded. The demurrer was overruled, and the defendants demanding a jury, the court impanneled a jury to try the

issue and ascertain whether any, and if any how much, of the said paper so admitted to probate was the last will and testament of the decedent Avis Hinton. After hearing the evidence the jury returned a verdict finding it to be the genuine last will and testament of said decedent. The plaintiff moved to set aside the verdict and grant a new trial, when the defendants agreeing and consenting thereto, the motion was granted. A jury was again impannelled and, after hearing the evidence, returned a like verdict as that found by the former jury and plaintiff by counsel moved the court to set aside the verdict and grant her a new trial, which motion the court overruled and entered a decree upon such verdict establishing the paper in controversy dated February 4, 1862, as the true last will and testament of the decedent, Avis Hinton, and dismissing plaintiff's bill with costs. The plaintiff took a bill of exceptions to certain rulings of the court which is made a part of the record.

The main question involved here is the sufficiency of the attestation of the will. At the date of the execution of the paper in February, 1862, the law of Virginia required the attesting witnesses to sign their names in the presence of the testator, but did not require them to sign in the presence of each other, and this continued to be the law of the State of West Virginia until it was changed in 1882 by the legislature of this state so as to require attesting witnesses to a will to sign not only in the presence of the testator but also in the presence of each other, and the statute has so remained ever since. The testatrix, Mrs. Hinton, died January 22, 1901. The question presented is whether the statute in force at the date of the making of the paper, or that in force at the time of the death of the testator controls in the execution of the will. Counsel for appellant contends that the statute in force at the date of the death governs and cite several cases in support of their position. The first case cited is that of *Sutton* v. *Chenault*, 18 Ga. 1. It is there held that, " The Act of February 16, 1852, requiring that from and after the First day of June thereafter all wills and testaments of personal property should be attested by three, or four credible witnesses and declaring that all laws of force in the State prescribing the mode of

proof of devises of personal property, (meaning doubtless real estate) shall be extended to wills of personal property, applies to and controls the proof of a will of personal property which had been executed before the passage of that act—the testator having died after the same had gone into effect." The opinion in this case at page 3, after referring to *Gilmore* v. *Shorter*, (2 Mod. 310) and *Ashburnham* v. *Bradshaw* (7 Mod. 239), says: "In the case of *Downs* v. *Townsend*, (Ambler 200) Lord Hardwicke is reported to have said, that 'the general rule as to testaments is, that the time of the testament, and not the testator's death, is regarded.' Probably basing their opinions upon the authority of these cases, other and more modern courts have adopted the rule, that the mode of proof must be regulated by the law of force at the time the will is executed." This case distinctly recognizes a distinction between a will disposing of real estate and one disposing of personal property and gives the reason why the rule in the case of devise of real estate should be the date of the execution of the will and of personal property the date of the death of the testator. The case of *Wakefield* v. *Phelps*, 37 N. H. 295, cited by appellant was a case of a married woman who made a will February 18, 1850, at a time when, under the statute, she was empowered to make a will. In 1854 a statute was passed taking from her the power to make a will. She died in 1856. The court held that, as no rights had vested under the will, its construction and validity depended upon the law as it stood at the time of the testator's death, the validity of the execution of the will at the time it was made was not in question. In that instance it was clearly the intention of the legislature to take from married women the power to dispose of property by will. Other cases cited by appellant did not affect the question at issue in the case at bar, except the case of *Langley* v. *Langley*, 18 R. I. 618, where a will had been executed October 17, 1872, attested by only two witnesses at which time the statute of the state prescribed that a will should be attested and subscribed by three or more witnesses and the testator died August 2, 1873, at which time the law of the state had been changed so as to require only two witnesses to a will, it was held: "That the will having been executed in accordance with the

law in force here at the time of the testator's death, it was properly admitted to probate here, and was effectual as a will in this State." This case discusses the question at some length and finally reaches the conclusion above stated. The authorities are, however, somewhat conflicting on this question. Mr. Schouler on Wills, at section 11, says: "In general the legality of the execution of a will should be judged of by the law as it was when it was executed and not as it was at the death of the testator." Citing *Muller* v. *Mc-Kelvey*, 5 Watts 399; Prec. Ch. 77; Amb. 550; 3 Atk. 551, and in a note there says: "A statute which changes the rules of evidence relating to the execution of wills has no retrospective operations; and a will must be proved as the law required at the date of its execution. *Giddings* v. *Turgeon*, 58 Vt. 106. As where a will at the date of execution was invalid if one of three witnesses was husband of a legatee, and the legislature afterwards changed the rule. *Ib.* Where a statute in force when the will was executed required witnesses to subscribe in the presence of each other, this course must be observed or the will is invalid, notwithstanding a subsequent change of the statute. *Lane's Appeal*, 57 Conn. 182. In this last-mentioned case the whole subject is discussed, and, while the rule of our text is sustained, it is admitted that the few decisions of American courts are not harmonious; South Carolina and Georgia seeming to take a contrary view. 3 McCord, 491; 43 Ga. 142. Of course, if the local statute expressly reserved the validity of former wills, the point is clear. 1 Bradf. (N. Y.) 252." In *Langley* v. *Langley*, *supra*, the court also quotes from Redfield on Wills, 3rd Ed., 406, section 30*a* 17, in support of the opposite doctrine, where it is said: "A will speaks from the death of the testator, and not from its date, unless its language, by fair construction, indicates the contrary intention." This is true, and yet it does not affect the question of the sufficiency of evidence to entitle the will to be recorded as the true will of the testator; the author was discussing the effect of the will especially as to property acquired after the making of the will and not as to the attestation of the will or as to what evidence was sufficient to entitle the same to recordation. In *Taylor* v. *Mitchell*, 57 Pa. St. 209, it is held: "1. A statute should be interpreted

so as to operate prospectively only. unless the language is so clear as to preclude all questions as to the intention of the legislature. 2. Retrospective laws generally, if not universally, work injustice, and ought to be so construed only when the mandate of the legislature is imperative. 3. When a testator makes a will formally executed according to the law existing at its execution, it would unjustly disappoint his right of disposition to apply to it a rule subsequently enacted, though before his death.'' At page 212, the court says: '' While it is true that every one is presumed to know the law, the maxim in fact is inapplicable to such a case; for he would have an equal right to presume that no new law would affect his past act, and rest satisfied in security on that presumption.'' See also English on Interpretation of Statutes, section 274. The will in case at bar was executed and subscribed on the 4th day of February, 1862, and admitted to probate March 7, 1901, thirty-nine years after its execution. In *Clark* v. *Dunnavant*, 10 Leigh 13, Parker, J., speaking for the Court said: '' A will over thirty years old it is said to prove itself, although the testator may have died recently, because of the unreasonableness of requiring strict proof of so old a transaction.  *  *  *  If the witnesses are dead, we infer all the necessary requisites from proof of their handwriting although the memorandum of attestation is silent as to the material ones.'' In case at bar the memorandum of attestation is by no means silent as to any material requisite under the law as it was at the time of the execution of the will, and the change in the law since only makes the one additional requirement that the witnesses shall subscribe their names '' in the presence of each other.'' Until the change made in the statute in 1882 the law never required the signing of the subscribing witnesses to be done in the presence of each other. At the time of the execution of the will of Avis Hinton, section 4 of chapter 122 of Revised Code of 1849 was in force and was the same as section 3 of chapter 77 of Code of 1868 which provided that no will should be valid unless it be in writing and signed by the testator or by some other person in his presence and by his direction in such manner as to make it manifest that the name was intended as a signature, and, unless it be wholly written by the testator

it should be done in the presence of at least two competent witnesses present at the same time and subscribing the will in the presence of the testator. And the 21st section of said chapter 77 provided that the preceding sections of the chapter should not extend to wills made before the 1st day of July, 1850, but the validity and effect of such law should be determined by the laws in force on the day previous to that day, and further providing that every will re-executed, republished or revived by any codicil shall for the purposes of this chapter be deemed to have been made at the time at which the same shall be so re-executed, republished or revived, Showing it to be the purpose of the legislature that all wills whether originally made or re-executed, republished or revived after the amendment should, in their execution, conform thereto, and to preserve the exception contained in the law as it stood in the code of 1859 relative to wills executed prior to July 1, 1850. It is only by implication, if at all, that section 21 can be construed to include wills made and executed subsequent to July 1, 1850, and prior to the date of the amendment as to the formalities of their execution, no language is contained in the statute which affirmatively applies its provisions to wills then in existence. In *Goodsell's Appeal*, 55 Conn. 171, it is said: "Previous to the act of 1885 a will was revoked by marriage and the birth of a child, but not by marriage alone. That act provides that 'if after the making of a will the testator shall marry, or if a child is born to the testator, and no provision is made in the will for such contingency, such marriage or birth shall operate as a revocation of such will.' *Held* to be prospective only, and that it could not operate upon any will where the marriage or birth had already occurred at the time the act was passed, although the testator died afterwards." And it is there further held: "As a rule of interpretation all statutes are to operate prospectively unless they contain language clearly retrospective."

The Act of 1882, chapter 84, re-enacted the whole chapter 77 of the code and re-enacted section 21 in the same form as it stood in the code, still preserving the exception as to wills executed prior to July 1, 1850, and by fair implication requiring that all wills made thereafter, and in terms providing that every will re-executed, re-published

or revived by any codicil, should be brought within the purview of the new law. The fact that it provides in express term that the re-execution, republication or revision by any codicil of any will should be deemed to have been made at the time at which such re-execution, &c. took place, makes it certain that the legislature did not intend by said act to affect in any way wills then in existence, and made subsequent to July 1, 1850, but to provide that if a testator should thereafter undertake to re-execute, republish or revive his will it must be done with the same formality as he was required to observe in executing a will for the first time. If the amendment of 1882 was intended to apply to all wills in existence at the time of its passage, except those made prior to July 1, 1850, requiring re-execution thereof to conform to the formalities in execution, why mention at all the re-execution, &c. of wills? Mentioning the one class excludes all others. If the intention of the legislature had been to render all wills void which had been executed prior to the passage of the amendment, not in conformity to its requirements, it would have made the last clause of section 21 read something like this: "All other wills executed prior to the passage of this act and not in conformity thereto are hereby revoked." From what has been said it follows, that the law existing at the date of the execution of a will disposing of real estate and not that at the date of the death of the testator governs the formalities of the execution and attestation thereof.

The appellant assigns as error the giving of three instructions asked by appellees; but the first and third are not objected to by counsel for appellaut in their brief and the same do not in any way appear objectionable or prejudicial to appellant, the assignment as to them is not well taken. The second instruction is in the following words: "The Court further instructs the Jury that if they believe from the evidence that the subscribing witnesses to the writing offered in evidence to the last will and testament of Avis Hinton, deceased, viz: George W. Brafford, Robert Commack and Evan Hinton are dead, and that their handwriting affixed thereto is the true and genuine handwriting of such witness, and that the signatures of such witnesses thereto have been known to be genuine then the Jury has a right

to presume in the absence of other evidence that the said written instrument was executed with all the formalities recited in the attestation to said instrument, and required by the law."

This instruction is excepted to because of the last words therein, "and required by the law." This objection is based on the theory of the appellant that the law existing at the date of the testator's death controlled the form of the execution of the will, and the appellees, having failed to prove the fact that two of the subscribing witnesses signed their names in the presence of each other, had failed in establishing the will. Complaint is also made by appellant of the refusal of the court to give seven several instructions asked for by her, all being based on the proposition that to establish the will the burden was on proponents to prove that two of the witnesses had signed their names as subscribing witnesses " in the presence of each other." The court did not err in refusing appellant's instructions.

Counsel for appellees assign cross-error, in that Joseph Hinton was not permitted to testify in relation to the execution of the will of Avis Hinton. He was asked whether he was present at the execution of the will offered in evidence and whether he saw the will executed and who executed it, and whether he saw the attesting witnesses sign the same and whether they were present at the same time and in the presence of each other, " and did they sign the will as witnesses in the presence of your mother and in each other's presence?" Objections were made to the answering of these questions and sustained by the court. Counsel for the proponents of the will stated to the court that they expected to prove by the witness that he was present at the time of the execution thereof, that the will was signed by Evan Hinton with the name of Avis Hinton in her presence and at her request as her own signature, and that said will was witnessed by George Brafford, Robert Commack and Evan Hinton, who signed the same in the presence of the testatrix and at her request and in the presence of each other, all being present at the same time, the witness also then being present, but the court refused to allow the witness to testify. In *Martz* v. *Martz*, 25 Grat. 361, it is held:    " Upon the pre-

senting for the probate of a will J. who is the nominated executor and propounder of the paper and also a devisee and legatee under it is a competent witness to sustain the probate." It is there further held: "A will is not a contract and an executor or legatee is not a party to it in the sense of the statute." "No witness who is not an attesting witness to a deed or will is incompetent to testify because of interest." Vol. 3, Part I, Minor's Inst. 542. In note on wills, 2 Munf. (Va. Rep. Anno.) 388, at the close of the case of *Hughes* v. *Hughes*, it is said: "A devisee or legatee, however, who is *not an attesting witness* is not subjected to the terms of the statute, but may be examined in support of the will, like any indifferent person, interest being now no disqualification, except in the case of attesting witnesses. 2 Min. Inst. (4th Ed.) 1015; *Martz* v. *Martz*, 25 Grat. 361."

The court erred in refusing to allow the testimony of Joseph Hinton to go to the jury. The verdict and decree of the court being in favor of the proponents of the will, they are not prejudiced by this error. We find no reversible error in the decree and the same is affirmed.

*Affirmed.*

---

# CHARLESTON

