MAYSELL MCCAULEY, *et al.*

*v.*

GAIL HENRY, *et al.*

(No. 10967)

Submitted September 9, 1958. Decided October 7, 1958.

*Herbert M. Blair,* for appellants.

*Linn Mapel Brannon,* for appellees.

DONLEY, JUDGE:

There is no dispute about the facts in this case. It involves the construction and legal effect of the will of Venie Henry, which is as follows:

"LAST WILL OF VENIE HENRY —

"1—I Venie Henry being in sound mind and disposing memory do make this my last Will and Testament.

"I will and Bequeath to my dear husband David F. Henry, all my property whatsoever it may be, or where ever it may be found.

"2—I will and Bequeath to my husband David F. Henry, all my interest in Coal, Oil, and gas, in or under a certain track of Land *in* Sassafras creek in The County of Lewis known as The W. H. Nay farm. It is my desire that my husband David F. Henry, may be the Beneficiary of my money I may-have after all my Debts and Funeral expenses have been paid.

"If there be any thing left after the death of my husband David F. Henry, I want it to go to my *Nipheu*, Gail Henry.

April 2 — 1928

Mayme T. Arthur
Polly Dodson

Venie Henry (Seal)"

Venie Henry died on December 3, 1933. Her husband, David F. Henry, took possession of the property so devised by his wife's will. The real estate, which is the subject matter of the controversy, consists of a certain lot or parcel of land situate in that section of the City of Weston, locally known as "Kitsonville", in Court House District, in Lewis County, West Virginia, fronting for fifty feet on the west side of what is now known as South Main Avenue, adjoining on the south the H. L. Spaur property (now owned by James W. Flesher), and extending back therefrom with that width in a westerly direction to the right of way of The Baltimore and Ohio Railroad Company at the rear. Upon the death of his wife, David F. Henry entered into sole and exclusive possession of the "Kitsonville" property, and exercised complete ownership, control and domination over the same, and collected, received, appropriated and used, as his own, the rents, issues and profits therefrom until his death. During the lifetime of David F. Henry, he entered into an agreement or deed with one of the plaintiffs, Maysell McCauley, dated January 7, 1947, whereby they established a right of way to have and maintain a driveway ten feet in width, with the property line between

said parties as the center thereof, extending from South Main Avenue in a westerly direction to the right of way of The Baltimore and Ohio Railroad Company, the southern half of said driveway lying along and just inside the northern boundary of the lot known as the "Kitsonville" property.

Thereafter David F. Henry died on May 28, 1956, and by his last will and testament devised and bequeathed all his estate, real and personal, unto his nephew, Gail Henry, his niece, Sarah B. Squires, and Maysell McCauley, to be divided among the three, share and share alike, in fee simple and absolutely.

The bill of complaint was filed by the plaintiffs, Maysell McCauley and Sarah B. Squires, against Gail Henry, Edna Henry, his wife, and Roy Squires, the husband of said Sarah B. Squires. It is alleged, and it is the contention of the plaintiffs here, that under the provisions of the will of Venie Henry, her husband, David F. Henry, became vested with a fee simple estate in the "Kitsonville" property of which Venie Henry died seised, and if so, the will of David F. Henry vests the title thereto in Gail Henry, Sarah B. Squires and Maysell McCauley, each becoming vested with an undivided one-third interest therein. The bill further alleges that the property is not susceptible of partition in kind, and the plaintiffs seek a decree for a judicial sale thereof and division of the proceeds, subject to the right of way previously mentioned.

The defendant, Gail Henry, filed his separate answer to the bill of complaint, admitting the allegations of fact therein contained, but denying that the legal effect of the Venie Henry will was to vest in David F. Henry a fee simple title to the "Kitsonville" property, and taking the position that under the provisions of Code, Chapter 36, Article 1, Section 16, the limitation over vested title in him, Gail Henry, and that no disposition of the "Kitsonville" property having been made during the lifetime of the said David F. Henry, his estate therein expired upon his death.

The plaintiff filed an amended and supplemental bill of complaint to bring into the case the property described in the Venie Henry will as "all my interest in Coal, Oil, and gas, in or under a certain track of Land in Sassafras creek in The County of Lewis known as The W. H. Nay farm."

The defendant, Gail Henry, filed his separate answer to this pleading, admitting the allegations of fact therein contained, but again taking the same position with reference to the "Nay" property that he had taken with reference to the "Kitsonville" property.

The case was submitted to the trial court upon the pleadings. The court held that the plaintiffs were not entitled to the relief sought by them, dismissed the original and the amended and supplemental bills of complaint, and decreed that the title of Gail Henry to said real estate be quieted and confirmed in him.

Maysell McCauley and Sarah B. Squires now appeal from that final decree.

Until shortly before the argument of the case in this Court, apparently neither counsel for the plaintiffs nor counsel for the defendant was aware of the provision of the 1931 Code, Chapter 41, Article 1, Section 10, which provides as follows:

> "The validity and effect of wills executed prior to the time this Code becomes effective shall be determined by the laws of this State in force at the time of their execution. Every will reexecuted, or republished, or revived by any codicil, shall, for the purposes of this chapter, be deemed to have been made at the time at which the same shall be so reexecuted, republished, or revived."

The Revisers' note to this section states:

> "Section 21, c. 77, Code 1923, provided that the preceding sections of that chapter should not extend to wills made prior to July 1, 1850, and that the validity and effect of such wills should be

determined by the laws in force prior to that day. As rewritten this section protects not only wills made prior to July 1, 1850, but any will in existence at the time this revised Code becomes effective, *against any changes in the law that are made herein.*" (Italics supplied.)

The defendant contends that the statute governs merely the law concerning the formalities of the execution and attestation of wills to the extent that the requirements for probate must conform to the provisions of the statute which were in effect at the time when the will was written. In support of this contention, the defendant relies upon *Barker* v. *Hinton,* 62 W. Va. 639, 59 S. E. 614. Syllabus 1 of that case states:

"The change in section 3135 (section 3, chapter 77) Code 1906, made by Chapter 84, Acts of the Legislature of 1882, making the additional requirement that witnesses subscribing a will should do so 'in the presence of each other' applies only to wills executed or re-executed, or republished or revived subsequent to the date of the said act."

It is readily apparent that this case constitutes no authority for limiting the broad scope of the provisions of the 1931 Code, Chapter 41, Article 1, Section 10, above quoted. It will be observed that the statute provides that both the *validity* and the *effect* of wills executed prior to the time when the 1931 Code became effective on January 1, 1931, shall be determined by the laws of this State in force at the time of their execution. If the Legislature had intended that this provision should relate merely to the manner of the attestation and execution of wills, that result could have been reached by the use of the word "validity" alone. However, by the use of the word "effect", the Legislature obviously intended to include within the operation of the statute the legal effect of a will. This interpretation is borne out by the Revisers' note previously quoted. The validity of a will is one thing; the legal effect of a valid will is quite another and different thing. We therefore hold that the legal effect of the will of Venie

Henry must be determined by the status of the law as it existed on April 2, 1928, the date of the execution of the will.

There is no conflict between the provisions of the foregoing statute and the provision of Chapter 41, Article 3, Section 1 of the 1931 Code, which provides that:

> "A will shall be construed, with reference to the estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will."

This statute, relating to the construction or interpretation of a will, is concerned with the ascertainment of the intention of the testator. Strictly speaking, the actual intention of a testator has nothing to do with the legal effect of his expressed intention. *Pack* v. *Shanklin*, 43 W. Va. 304, 27 S. E. 389. And, however clearly a testator may express his intention, the legal effect which shall and must be given to it by the courts is purely a question of law. In numberless cases the intention of the testator has been defeated for the reason that the law did not permit that intention to be carried out. This is aptly demonstrated by cases where the provisions of a will violate the rule against perpetuities. If the language of the will offends against the rule, "it will be remorselessly applied." *Prichard* v. *Prichard*, 91 W. Va. 398, 113 S. E. 256. See also, *Goetz* v. *Old National Bank of Martinsburg*, 140 W. Va. 422, 84 S. E. 2d 759. While it is generally held that a will made before the passage of a statute is governed by the provisions thereof, if the testator dies after its passage, this rule has no application where it is clear that the Legislature intended the statute to apply only to wills executed after its passage. 57 Am. Jur., Wills, Section 1021, page 661; Ann. 129 A. L. R. 859.

We think it is clear, therefore, that the provisions of the 1931 Code, Chapter 41, Article 1, Section 10, expressed the intention of the Legislature that the laws of this State

which were not in force on April 2, 1928, should not determine the legal effect of the will of Venie Henry. Therefore, the provisions of the 1931 Code, Chapter 36, Article 1, Section 16, relied upon by the defendant, and which provisions were new and effective only as of January 1, 1931, have no application. This statute provides, in part, that:

> "If any interest in or claim to real or personal property be given by sale or gift inter vivos or by will to one, with a limitation over either by way of remainder or of executory devise or any other limitation, and by the same conveyance or will there be conferred, expressly or by implication, a power upon the first taker in his lifetime or by will to use or dispose absolutely of such property, the limitation over shall not fail or be defeated except to the extent that the first taker shall have lawfully exercised such power of disposal."

It will be seen that the effect of this statute, as applied to all wills executed since January 1, 1931, is to render valid a limitation following the devise of *any* interest in or claim to real or personal property where the will confers, expressly or by implication, a power upon the first taker in his lifetime or by will to use or dispose absolutely of such property.

The statute effected a radical change in the common law as it existed prior to January 1, 1931, and which was in effect on April 2, 1928, the date of the execution of the will of Venie Henry. The common law rule, which has been established by repeated decisions in the Virginias, is well stated by the Virginia Court in *Trustees of Duncan Memorial Methodist Church* v. *Ray,* 195 Va. 803, 80 S. E. 2d 601. The provisions of the will of Venie Henry are strikingly similar to the provisions of the will involved in that case. The pertinent provisions thereof are as follows:

> "I, A. T. Ford request that my wife Eva Clyde Ford take immediate possession of my home, with its contents—also all stock—money in bank—and every thing that stands in my name.

"My wife is to see every thing I may owe, be paid.

"At my *wife* death, the remainder of what may be left, is to be divided equally between the Methodist Orphanage, Richmond, Va. and the Methodist Church, Ashland, Va."

The Court said that:

"It is clear from the use of the phrase 'the remainder of what may be left' that the testator gave to his widow absolute power of disposal."

The Court then went on to say:

"Having thus determined that the testator's primary intention was to give his wife possession of and full power of disposal of his property, we are brought to the second inquiry as to whether there is any rule of law which prevents us from giving effect to his secondary intention to give to the named remainderman 'the remainder of what may be left' at her death.

"In *Burwell's Ex'rs* v. *Anderson,* 1831, 3 Leigh 348, 355, it was said: 'From the earliest time, it has been among the received doctrines of the common law, that an absolute and unqualified power of disposing * * * should be construed as a gift of the absolute property. In this the law but corresponds with the dictates of common reason. Every man of ordinary capacity would understand a power to dispose of a thing as he pleased, as a gift of the thing itself; and hence, everyone who uses the phrase without qualification, is understood by the law as intending a gift. The power of absolute disposition is, indeed, the eminent quality of absolute property.'

"At common law, if an estate be given to one, though for life only, with full and absolute power of disposition of the property, since this is equivalent to the fee simple, there could be no valid remainder limited after his estate. All the more is this true where the estate is given to the first taker *generally,* without expressly stating that it is for his life, and is followed by the absolute

power of disposition. No remainder can be limited after a vested fee simple. This results from the nature of things as well as from the definition of a remainder. There can be no remnant after a fee simple, which is all. 1 Minor on Real Property, SS 158, 707, pp. 217,925 (2d Ed., Ribble, 1928).

"Where there is a devise or bequest to one in *general terms* and there is a subsequent limitation over of what remains at the first taker's death, if there is also given to the first taker an unlimited and unrestricted power of absolute disposal, express or implied, the devise or bequest to the first taker is construed to pass a fee, and the limitation over is invalid. E. G., Crisman v. Swanson, 193 Va. 247, 68 S. E. 2d 502; Carr v. Effinger, 78 Va. 197.

"Illustrative of the language held to imply the power of absolute disposal and thus a fee simple in the first taker are the following: 'at their death, the balance, if any, to their children', Hall v. Palmer, 87 Va. 354, 12 S. E. 618, 11 L. R. A. 610; 'what may remain of the same', Farish v. Wayman, 91 Va. 430, 21 S. E. 810; 'if there is any left after their death', Brown's Guardian v. Strother, 102 Va. 145, 47 S. E. 236; 'if at my wife's death there remains anything', Steffey v. King, 126 Va. 120, 101 S. E. 62; 'such remaining part of this bequest as she shall die possessed of, if any,' Skinner v. Skinner, 158 Va. 326, 163 S. E. 90, 91."

The provisions of the will of Venie Henry, as above stated, first devise and bequeath to her husband, David F. Henry, "all my property whatsoever it may be, or where ever it may be found". Following this, she wills to him all her "interest in Coal, Oil, and gas" under the Nay farm, and expresses her desire that her husband may be the beneficiary of her money after all debts and funeral expenses have been paid. She then concludes: "If there be any thing left after the death of my husband David F. Henry, I want it to go to my *Nipheu* Gail Henry."

For the purposes of this case, we assume, without deciding, that these words were not merely precatory. Compare *Hedrick v. Hedrick*, 125 W. Va. 702, 25 S. E. 2d 872.

It is impossible to distinguish between the legal effect of the words "if there be any thing left after the death of my husband", and the language of the will of A. T. Ford, hereinbefore quoted by the Virginia Court in *Trustees of Duncan Methodist Church* v. *Ray, supra,* where the will provided: "At my *wife* death, the remainder of what may be left, is to be divided equally between the Methodist Orphanage, Richmond, Va. and the Methodist Church, Ashland, Va."; or to distinguish such words from those used in the other examples quoted by the Court in that case.

Nothing to the contrary was held in *Weiss* v. *Soto*, 142 W. Va. 783, 98 S. E. 2d 727. In that case while there was, in terms, an absolute devise and bequest of real and personal property in fee simple, there was no provision that "if there be anything left after the death" of the first taker, it should pass to another. While the Court held in that case that the words "absolutely in fee simple" should not be given their technical meaning, and operated to create a life estate only, that decision was made upon the basis of the facts and circumstances surrounding the testator when he made his will, and because it appeared from the context of the whole will that the testator did not intend to use those words in their technical sense. Furthermore, the *Weiss* case recognizes the rule, in accordance with the Virginia decision hereinbefore cited, that a limitation over after the gift of an estate in fee simple is void at common law. See *Totten* v. *Dawson*, 104 W. Va. 274, 139 S. E. 858. The point need not be labored, for it is conceded by counsel for Gail Henry. (Brief, page 4). In addition, this Court held in the *Weiss* case that the will there under construction did not either expressly or by implication contain a power to use or consume, in whole or in part, the property given to the first taker, nor did it contain a power of disposition thereof. Also recognized in the *Weiss* case is the well established rule in the construction of wills that a gift in fee unequivocally made in one clause cannot be taken away or limited by a subse-

quent clause, except by provisions which are equally as clear and decisive as the words of donation.

Such, then, was the state of the law prior to the adoption of the 1931 Code. The excellent opinion of Judge Haymond in the *Weiss* case fully exhausts the authorities upon the subject. It would serve no useful purpose and would be an affectation of learning to attempt to reconsider and discuss the principles so ably and thoroughly set forth by him. See editorial note by Professor James W. Simonton, 37 W. Va. L. Q. 422.

Since Chapter 36, Article 1, Section 16, did not become effective to change the common law rule until January 1, 1931, it does not control the legal effect of the will of Venie Henry. As previously stated, under the provisions of Code, Chapter 41, Article 1, Section 10, the legal effect of the will must be determined by the laws of this State in force at the time of its execution on April 2, 1928.

We therefore hold that the will of Venie Henry vested an estate in fee simple in all the property which was devised and bequeathed by her to her husband, David F. Henry, and that the attempted gift over to Gail Henry of anything left after the death of David F. Henry was invalid.

Accordingly, since David F. Henry died seised of the property in fee simple, it was devised by his will to Gail Henry, Sarah B. Squires and Maysell McCauley, share and share alike, in fee simple, subject to the ten-foot right of way created by the agreement or deed of January 7, 1947. It follows that the plaintiffs, Maysell McCauley and Sarah B. Squires, as co-tenants of that property were entitled to partition thereof, upon compliance with the applicable provisions of the statutes relating to partition. Code, Chapter 37, Article 4.

The decree of the Circuit Court of Lewis County is reversed and the cause is remanded for such proceedings as the parties may deem advisable to take, in conformity with the principles hereinbefore set forth.

*Reversed and remanded.*