298 S.E.2d 843

**Jessie BLACK**

v.

**Paul BLACK, et al.**

No. 15391.

Supreme Court of Appeals of
West Virginia.

Dec. 13, 1982.

Harry McCulloh, Petersburg, Anthony G. Halkias, Charleston, for appellant.

Geary & Geary and Dennis V. DiBenedetto, Petersburg, Sponaugle & Sponaugle and George I. Sponaugle, II, Franklin, for appellees.

McHUGH, Justice:

This action is before this Court upon the petition of Jessie Black for an appeal from the final order of the Circuit Court of Pendleton County, West Virginia. Pursuant to that order dated March 10, 1981, the circuit court held that the appellant owned a life estate, rather than fee simple title, in certain items of real and personal property. The circuit court held that certain of the appellees had a remainder interest in those properties. Furthermore, the circuit court modified two attempted conveyances of real property by the appellant. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

The principal facts appear in the petition. E.E. Black and Minnie Black, both of whom are now deceased, had a farm near Seneca Rocks, Pendleton County. That farm contained approximately 460 acres. Their children, Claude Black, I.D. Black and the appellant, became joint owners of the farm.

By a document dated January 3, 1950, and referred to in the complaint as a "written joint survivorship and partnership agreement," Claude Black, I.D. Black and the appellant agreed as follows:

WHEREAS the parties hereto are the joint owners of the E.E. Black home farm ... and they having mutually agreed among themselves that in the event of the death of any one or more of said parties the survivor or survivors shall receive their interest therein.

NOW, THEREFORE, THIS AGREEMENT WITNESSETH, that in the event of the death of any of the parties to this agreement the other parties hereto shall receive the interest of said deceased party, and

WHEREAS we, the said parties hereto, being the joint owners of said farm and operate the same jointly and are the joint owners of the personal property used in connection of said farm, it is agreed between us that all personal property owned by either of us shall go to the survivor or survivors upon the death of each or any of us.

That agreement was recorded in the office of the Clerk of the County Commission of Pendleton County.

Subsequently, Claude Black, I.D. Black and the appellant executed a joint will. That will named Paul Black and James Paul Geary as executors and was dated August 11, 1969. That will provided, in part, as follows:

FIRST: It is the desire of each of us that all of our property, both real and personal, shall remain and continue in the family, and to carry into effect that intention, it is the will of each of us, to-wit: I.D. Black, Claude Black and Jessie Black, that upon the death of any one of us, all the property, both real and personal, belonging to him or her, shall go to the survivors of that one; and upon the death of either of said survivors, all of the property of that one shall go to the remaining survivor, this being the joint and several will of each and all of us.

SECOND: Providing, further, however, that upon the death of the last survivor of I.D. Black, Claude Black, and Jessie Black, all of the estate, both real and personal, then remaining, shall go to and become the property in fee of the following named nieces and nephews and in the share and interest so shown....

There were seven nieces and nephews named in the will and each was to receive a one-seventh interest in the estate "then remaining."[1] Those nieces and nephews and the executors are appellees in this action.

Neither Claude Black nor I.D. Black ever married. They died without issue. Claude Black died on April 30, 1971, and I.D. Black died on March 14, 1976. The joint will was recorded in both instances in Pendleton County during probate proceedings. Appraisement and final settlement reports were recorded.

By separate deeds dated February 17, 1979, the appellant, reserving a life estate for herself, conveyed the 460 acre farm and a tract of approximately 36 acres. The 460 acre farm was conveyed to Burl D. Nelson for life. After the death of Burl D. Nelson, fee simple title was to vest, pursuant to the deed, in Ruby Gray, Doland Black, Rita Jean Black, Norman Black, Mary Ruth Black and Lynn Black as joint tenants with the right of survivorship. The other deed conveyed the 36 acre tract to Burl D. Nelson and Denton Kisamore for their joint and respective lives with remainder in fee simple to Ruby Gray, Dolan Black, Rita Jean Black, Norman Black, Mary Ruth Black and Lynn Black as joint tenants with the right of survivorship. Both deeds were recorded in Pendleton County.

In July, 1979, the appellant filed a complaint in circuit court in which she asserted that having survived the deaths of Claude Black and I.D. Black, both the 1950 agreement and the joint will vested her with fee simple title to the 460 acre farm and 36 acre tract and all the personal property located upon that real estate. Specifically, the appellant alleged that inasmuch as she owned all the property in question, she could sell or dispose of it in fee simple, and none of the appellees had any interest in the property during her lifetime. The appellant further sought relief for breach of duty against the executors named in the joint will.

The appellees filed an answer in which they denied the essential allegations of the complaint. They also filed a counterclaim in which they asserted that the two deeds dated February 17, 1979, were null and void.

With respect to the issue of the appellant's interest in the property in question, the circuit court resolved the matter upon the record without a jury and without taking evidence. By order dated March 10, 1981, the circuit court held that pursuant to the joint will, the appellant had a life estate only in the 460 acre farm and the 36 acre tract, and a life interest only in the personal property, with the right to consume that personal property through normal use. The circuit court declared that the interests in the remainder of both the real and the personal property were held by the seven nieces and nephews or their heirs. Furthermore, the circuit court held the deeds dated February 17, 1979, to be null and void to the extent those deeds purported to convey more than the appellant's life interest in the property. The circuit court did not rule in that order upon the appellant's cause of action against the executors.

The reasons for the ruling of the circuit court against the appellant were stated in the circuit court's memorandum of opinion dated January 7, 1981. The circuit court concluded as follows concerning the joint will:

> There is no intent by the three Testators to vest the survivor with the assets of the estate absolutely, but the intent is clearly expressed that the survivor shall have a lifetime interest only then the

---

1. The nieces and nephews named in the will were as follows: Paul Black, Worth Black, Ruby Gray, Norman Black, DeWitt Black, Lynn Black and Mary Ruth Black.

The record indicates that Worth Black died leaving as his heirs Ruth Black (his wife) and Donald Black and Rita Jean Black (his children).

assets shall vest in the third parties, nieces and nephews, named in the will.

. . . .

The ... agreement dated January 3, 1950, entered into by the parties was completely modified and superseded by their subsequent agreement as set forth and contained in their joint will.

By order dated July 14, 1981, the circuit court appointed a commissioner to hear the claim of the appellant for relief against the executors named in the joint will. Subsequently, as indicated in his report dated October 23, 1981, the commissioner concluded that the executors had at all times acted properly. The report of the commissioner was approved by the circuit court by order dated November 16, 1981.

## I

### The Joint Will

Neither the appellant nor the appellees question the validity of the August 11, 1969, will executed by Claude Black, I.D. Black and the appellant.

The appellant contends that, having survived Claude Black and I.D. Black, she acquired fee simple title to the real property and personal property in question, because (1) the language of the will so indicates, and (2) the will does not contain phrases such as "life estate" limiting her interest. The appellant further contends that if she acquired something less than a fee simple in the property under the will, she nevertheless had the right to fully dispose of that property because of *W. Va. Code*, 36–1–16 [1931], without the intervention of the appellees. Finally, the appellant contends that inasmuch as she was not afforded an opportunity to submit extrinsic evidence to resolve ambiguities in the will, the trial court committed error.

The appellees contend, however, that the will clearly provides them with a remainder in fee to the property in question. In this regard, the appellees contend that the appellant is bound by the provisions of the will because Claude Black, I.D. Black and the appellant mutually agreed upon the will's provisions, one of which provisions allegedly provides the appellees with a remainder in fee to the property in question. Finally, the appellees contend that the will is not ambiguous, and therefore extrinsic evidence was not needed to interpret the will.

*W. Va. Code*, 36–1–16 [1931] provides as follows:

If any interest in or claim to real or personal property be given by sale or gift inter vivos or by will to one, with a limitation over either by way of remainder or of executory devise or any other limitation, and by the same conveyance or will there be conferred, expressly or by implication, a power upon the first taker in his lifetime or by will to use or dispose absolutely of such property, the limitation over shall not fail or be defeated except to the extent that the first taker shall have lawfully exercised such power of disposal. The proceeds of a disposal under such power shall be held subject to the same limitations and the same power of use or disposal as the original property, unless a contrary intent shall appear from the conveyance or will: Provided, however, that a trust deed or mortgage executed by such first taker shall not be construed to be an absolute disposal of the estate thereby conveyed unless there be a sale thereunder, but shall be effective only to the extent of the lien or encumbrance created by such trust deed or mortgage.

That statute, as it relates to the action before this Court, provides that if any interest in real or personal property be given by will with a limitation over by way of remainder, and by the will there be conferred, expressly or by implication, a power upon the first taker to use or dispose absolutely of such property, the limitation over shall not fail or be defeated "except to the extent that the first taker shall have lawfully exercised such power of disposal." [2]

---

**2.** In *Wheeling Dollar Savings & Trust v. Leedy*, 158 W.Va. 926, 216 S.E.2d 560 (1975), this Court stated as follows:

Where a will made after January 1, 1931 provides for a limitation over by way of remainder and, expressly or by implication, also

The effect of that statute is to preserve the initial validity of the limitation over, subject to the first taker's power of disposal.

In *McCauley v. Henry*, 143 W.Va. 770, 105 S.E.2d 129 (1958), the testatrix left to her husband all her property and further provided that if there be anything left after the death of her husband it would go to her nephew. That will was executed by the testatrix in 1928, prior to the January 1, 1931, effective date of *W.Va.Code*, 36–1–16 [1931]. This Court concluded, therefore, that the provisions of *W.Va.Code*, 36–1–16 [1931], did not apply.

In *McCauley*, this Court held that the will vested the testatrix's husband with fee simple title to the property. This Court further held that the attempted gift over to the nephew, of anything left after the death of the husband, was invalid. Recognizing that *W.Va.Code*, 36–1–16 [1931], did not apply to the will in question, the reasoning of this Court in *McCauley* was based upon the common law rule. The common law rule, as restated in *McCauley*, was as follows:

> Where there is a devise or bequest to one in *general terms* and there is a subsequent limitation over of what remains at the first taker's death, if there is also given to the first taker an unlimited and unrestricted power of absolute disposal, express or implied, the devise or bequest to the first taker is construed to pass a fee, and the limitation over is invalid.

143 W.Va. at 779, 105 S.E.2d at 134.[3]

The *McCauley* action represents the state of the law prior to the effective date

of *W.Va.Code*, 36–1–16 [1931]. The joint will in this action, however, was dated August 11, 1969, and is therefore subject to the provisions of *W.Va.Code*, 36–1–16 [1931].[4]

In *Wheeling Dollar Savings & Trust Co. v. Leedy*, 158 W.Va. 926, 216 S.E.2d 560 (1975), the testator established a trust for the purpose of providing income to his daughter "during the term of her natural life." 158 W.Va. at 933, 216 S.E.2d at 565. The trustee had the power to sell or transfer the trust property as the interests of the trust or daughter required. Upon the death of the testator's daughter, the trust estate was to become the "absolute" property of the daughter's children or, if no children existed, the "absolute" property of a hospital. 158 W.Va. at 933, 216 S.E.2d at 565. The testator's will was dated January 30, 1931, and the testator died on March 7, 1931.

In *Wheeling Dollar Savings & Trust Co.*, this Court held that *W.Va.Code*, 36–1–16 [1931], did not provide the testator's daughter with a fee simple absolute in the trust corpus. Nor did the daughter have an implied power to acquire the trust corpus. In syllabus point 4, this Court stated: "Where the express terms of a will limits [sic] a beneficiary to a life estate and provides for absolute vesting in remainders, the burden is on the life beneficiary to demonstrate that the testator appended a power of disposition permitting consumption of the estate in favor of the life tenant." In that action, this Court considered

---

provides that the first taker of the testator's property may use or dispose of such property absolutely, the limitation over shall not fail or be defeated except to the extent that the first taker shall have lawfully exercised the power of disposal.
158 W.Va. at 931, 216 S.E.2d at 564.

**3.** In *McCauley, supra,* this Court held in syllabus point 4 as follows: "Where an estate is given by will to one in general terms and there is a limitation over of what remains at the first taker's death, an absolute power of disposal is implied from the words 'If there be any thing left after the death' of the first taker."

**4.** In *Weiss v. Soto,* 142 W.Va. 783, 98 S.E.2d 727 (1957), in a will dated February 22, 1908, the

testator left property to his wife "absolutely in fee simple" with the rest and residue of that property after the wife's death to be divided among the testator's three daughters. This Court held that under the will the wife received a life estate, and the testator's daughters received a remainder in fee simple. In reaching its decision, this Court noted that inasmuch as the will was dated February 22, 1908, the provisions of *W.Va.Code*, 36–1–16 [1931], did not apply. The will in question was a holographic will written by the testator, and in that action this Court noted that the will contained "expressly or by implication, neither a power to use or consume, in whole or in part, nor a power of disposition, in connection with property given or conveyed to the first taker...." 142 W.Va. at 803–804, 98 S.E.2d at 738.

the testator's general testamentary plan as reflected in the will and concluded that the daughter had neither an express nor an implied power to acquire the trust corpus.[5]

The joint will in the action before this Court is somewhat different from the will in *Wheeling Dollar Savings & Trust Co.* inasmuch as the will before this Court does not expressly confer upon the appellant an estate "during the term of her natural life." Nevertheless, from a reading of the entire will, this Court concludes, as did the circuit court, that the appellant received under the will a life estate only in the property in question and that the named nieces and nephews received a remainder in fee simple.

That conclusion is clearly mandated by the provisions of the joint will, and, as the appellees assert, reference to extrinsic evidence is not appropriate. As indicated by the provisions of *W. Va. Code*, 36-1-16 [1931], the remainder or gift over to the named nieces and nephews does not fail but, rather, is subject to the appellant's power of disposal, if any, conferred by the will. No such power of disposal, either by express provision or by implication, was conferred upon the appellant by this particular will. Rather, the will, after stating the desire of the testators to keep the property in the family, directs that upon the death of the appellant, the property shall "become the property in fee" of the named nieces and nephews.

Although the joint will provides that the nieces and nephews shall receive the property "then remaining," we do not believe that the phrase "then remaining" is sufficient in this action to defeat the remainder or gift over to the named nieces and nephews. We agree with the circuit court that the phrase "then remaining" refers to the ordinary use and consumption of property by a life tenant during the course of a life estate. *See Stout v. Clifford, supra,* 70 W.Va. at 182–185, 73 S.E. at 318, and *Behrens v. Baumann, supra,* 66 W.Va. at 58–59, 66 S.E. at 6.

We hold that where in a joint will dated August 11, 1969, three testators left all their property, both real and personal, to the two surviving testators and then to the last surviving testator, and the will further provided that upon the death of the last surviving testator the property "then remaining" would become the property "in fee" of certain named nieces and nephews, the last surviving testator received under the will a life estate in the property, and the named nieces and nephews received a remainder in fee simple. *W. Va. Code,* 36-1-16 [1931]. In that regard, the final order of the circuit court is affirmed.

II

The Joint Survivorship and Partnership Agreement

In her appeal before this Court, the appellant contends that the 1950 joint survivorship and partnership agreement, relating to the 460 acre farm and personal property connected with that farm, was a valid agreement which expressed an intention that the farm be held by Claude Black, I.D. Black and the appellant jointly with survivorship, to the exclusion of the appellees. The appellees, however, contend that inasmuch as the 1950 agreement was neither a deed nor a will, the agreement was not sufficient to create among Claude Black, I.D. Black and the appellant the right of survivorship. The appellees rest that contention upon the provisions of *W. Va. Code,* 36-1-1 [1931], which provides as follows:

5. In the following actions, where the wills in question expressly gave the first taker a life estate, this Court held that the first taker received a life estate under the will rather than an absolute power of disposal of the property: *Wiant v. Lynch,* 104 W.Va. 507, 140 S.E. 487 (1927), where the testator left property to his wife "for and during her natural life" with "all that remains" to go to others; *Woodbridge v. Woodbridge,* 88 W.Va. 187, 106 S.E. 437 (1921), where the testatrix left property to her husband "so long as he shall live" with the right "to sell the same for his benefit;" *Stout v. Clifford,* 70 W.Va. 178, 73 S.E. 316 (1911), where the testator left property to his wife "for and during her natural life" with others to take the property "if any is left" upon the wife's death and *Behrens v. Baumann,* 66 W.Va. 56, 66 S.E. 5 (1909), where the testator left property to his wife "for her own use during her natural life" with another to take "what may be left."

No estate of inheritance or freehold, or for a term of more than five years, in lands, or any other interest or term therein of any duration under which the whole or any part of the corpus of the estate may be taken, destroyed, or consumed, except for domestic use, shall be created or conveyed unless by deed or will.

The appellees contend that, in any event, the 1950 agreement was superseded by the subsequent joint will.[6]

The joint will dated August 11, 1969, was a testamentary document signed by three testators, i.e., Claude Black, I.D. Black and the appellant. In *In Re: Estate of Frank Reed*, 125 W.Va. 555, 26 S.E.2d 222 (1943), this Court distinguished joint wills from mutual wills as follows: "A joint will is a testamentary instrument jointly signed by two or more persons. Mutual wills are the separate wills of two persons which are reciprocal in provisions." 125 W.Va. at 558, 26 S.E.2d at 224.

In *Underwood v. Myer*, 107 W.Va. 57, 146 S.E. 896 (1929), a husband and wife executed a joint will in which they left property to the survivor of them for life and then to their daughter in fee simple. The husband died, and the wife accepted certain benefits under the will. The wife instituted an action asserting the validity of the will.

Upholding the validity of the joint will, this Court in *Underwood* noted that the reciprocal provisions of the will constituted evidence that the will was the result of a contractual agreement between the husband and wife. As this Court stated: "By that arrangement each party to the will agreed to make a testamentary disposition in favor of the survivor with remainder to the [daughter]. The provision for the one was the inducement of the provision for the other." 107 W.Va. at 59, 146 S.E. at 897. This Court held that the agreement between the husband and wife became a "fixed obligation" upon the death of the husband and the acceptance of the wife of

testamentary benefits. This Court, therefore, indicated that a trust could be imposed upon the estate of the wife for the benefit of the daughter.

The property constituting the subject matter of the joint will in the action before this Court included the 460 acre farm and personal property referred to in the 1950 agreement of Claude Black, I.D. Black and the appellant. However, the provisions of the joint will and the provisions of the 1950 agreement concerning that property are inconsistent. As indicated in part I of this opinion, the joint will provided that the appellant, having survived Claude Black and I.D. Black, receive a life estate in the property with a remainder in fee to the named nieces and nephews. On the other hand, the 1950 agreement did not refer to the nieces and nephews and did not provide that the surviving party to the agreement receive a life estate. Therefore, the joint will and the 1950 agreement are dissimilar.

■ As we held in *Underwood, supra*, we are of the opinion that the joint will before this Court included a contractual agreement in this action between Claude Black, I.D. Black and the appellant. Furthermore, there is no dispute in the record that the appellant accepted benefits under the joint will upon the deaths of Claude Black and I.D. Black. As noted above, however, the provisions of the joint will are inconsistent with the provisions of the 1950 agreement. The joint will superseded the 1950 agreement.

Accordingly, we hold that a written agreement dated January 3, 1950, whereby three parties expressed an intent that certain real and personal property owned by them be held jointly with survivorship, was superseded by a joint will of the parties dated August 11, 1969, where two of the parties died and the joint will was probated as to them and the last surviving party accepted benefits under the joint will and where the disposition of property under the joint will was inconsistent with the 1950

---

**6.** It should be noted that the appellees assert that a duplicate of the joint survivorship and partnership agreement was destroyed with the consent of Claude Black, I.D. Black and the appellant at the same time the joint will was

executed. *See* appellees' brief filed March 29, 1982, at 2. The appellees further assert that the other duplicate was subsequently found by the appellant and recorded in Pendleton County. *Ibid.* at 3.

agreement of the parties concerning the property in question.

This Court need not rule upon the issue of the sufficiency of the 1950 agreement to create a survivorship interest in the 460 acre farm and personal property owned by Claude Black, I.D. Black and the appellant.

The ruling of the circuit court that the 1950 agreement was superseded by the subsequent joint will is affirmed.

### III

### The Accounting Issues

■ In its order dated March 10, 1981, the circuit court expressly declined to rule upon the accounting issues relating to the estates of Claude Black and I.D. Black. However, by order dated July 14, 1981, the circuit court appointed Thomas H. Keadle as commissioner to hear the accounting issues and make recommendations to the circuit court. As indicated in his report dated October 23, 1981, the commissioner concluded that the executors, Paul Black and James Paul Geary, acted properly with respect to the administration of the estates of Claude Black and I.D. Black.

The commissioner specifically concluded that, for both estates, the payments to the law firm of James Paul Geary, an attorney, of legal fees in addition to the payment to Geary of executor commissions were justified.

The report of the commissioner was confirmed, ratified and approved by the circuit court by order dated November 16, 1981. The circuit court, therefore, held that the executors acted properly with respect to

the estates of Claude Black and I.D. Black.[7]

In her appeal to this Court, the appellant seeks relief from alleged accounting irregularities relating to the Claude Black and I.D. Black estates. In particular, the appellant asserts that it was improper for executor Geary's law firm to receive fees for legal services for both estates, while at the same time Geary was paid executor commissions.

With respect to the question of the compensation of an executor for the administration of an estate, *W.Va.Code*, 44–4–12 [1982], provides, in part, as follows: "The fiduciary commissioner in stating and settling the account shall allow the fiduciary any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation in the form of a commission on receipts or otherwise." As indicated below, five percent of the receipts of the executor or administrator for the estate is the ordinary measure of compensation to the executor or administrator for the administration of an estate, although under peculiar circumstances he or she may be allowed more compensation. *See* Syl. pt. 4, *Hoke v. Hoke*, 12 W.Va. 427 (1878); Syl. pt. 3, *Estill & Eakle v. McClintic's Adm'r*, 11 W.Va. 399 (1877).

In *In Re: Estate of Gus Lapinsky v. Sparacino*, 148 W.Va. 38, 132 S.E.2d 765 (1963), the sole distributee of an estate asserted that the administrator, an attorney, had taken excessive compensation with respect to that estate. Noting that

---

7. This Court granted an appeal in this action by order entered on November 3, 1981. However, the October 23, 1981, report of the commissioner was approved by the circuit court by order dated November 16, 1981, after the appeal to this Court had been granted. As stated in the brief of the appellant:

Since this Honorable Court awarded an appeal in this case on November 3, 1981, counsel for the appellant moved the Circuit Court of Pendleton County for a stay of further proceedings in this matter pursuant to the appeal and supersedeas awarded by this Honorable Court. By order entered on November 16, 1981, the Circuit Court of Pendleton County overruled the appellant's motion for a stay

of proceedings, and proceeded to confirm, ratify and approve the findings of fact and rulings of law made by the special commissioner of the court, and made the same the order of the court as of that date, and held that there was no improper action on the part of the co-executors of the estates of Claude Black, deceased, and I.D. Black, deceased.

This Court will review the accounting issues in this action, those issues having been discussed in the October 23, 1981, report of the commissioner, because those issues were raised in the appellant's complaint filed in 1979, the parties argued those issues in the briefs before this Court and this Court has before it a record concerning those issues.

there was nothing peculiar or unusually difficult in the settlement of the estate, this Court agreed with the distributee and required the administrator-attorney to refund to the distributee the amount of excessive compensation. In so holding, this Court stated in syllabus point 2 as follows: "An administrator of the estate of a deceased person is not entitled to more than usual compensation for his services as such merely because of the fact that he is a lawyer and the estate benefits from his legal knowledge and experience." Furthermore, as this Court stated:

> [F]ive percent of actual receipts is a firmly established guide or standard, though by no means an inflexible guide or standard, which for years has been adhered to in this state and in Virginia, as a measure of 'reasonable compensation' to a personal representative for his services as such; but that, under peculiar circumstances, a higher or a lower rate of compensation will be deemed reasonable and proper. The same general principles apply even though the personal representative is a lawyer. A personal representative who is a lawyer is not entitled to a higher rate of compensation than he would be entitled to if he were not a lawyer; and this is true notwithstanding the fact that the estate derives benefit from his legal knowledge. It is a part of the fiduciary obligation and duty of the lawyer to accord to the estate entrusted to him the full benefit of his competency, including his legal knowledge; and, if the estate is not a peculiar or unusual one, he is not entitled to a peculiar or unusual compensation merely by virtue of the fact that he is a lawyer.

148 W.Va. at 42–43, 132 S.E.2d at 769.[8]

In *Tyler and Arnold v. Reynolds*, 120 W.Va. 232, 197 S.E. 735 (1938), an attorney also serving as co-executor of an estate sought extra compensation for legal services performed on behalf of the estate in addition to his compensation as co-executor. This Court remanded the action for a determination of the amount of such extra compensation.

In so holding, this Court in *Tyler* stated that it does not look with favor upon "the charging of a legal fee by a fiduciary-lawyer in addition to commissions...." 120 W.Va. at 254, 197 S.E. at 745. However, this Court recognized that "[i]f the services were necessary and beneficial to the fiduciary estate and have been faithfully and efficiently performed, such facts should be taken into consideration in fixing the compensation of the person who rendered the services." 120 W.Va. at 255, 197 S.E. at 745.

In syllabus point 6 this Court in *Tyler* held as follows:

> In settlement of a decedent's estate it is improper for an executor who is a lawyer to be allowed, for extra services performed by him, a legal fee in addition to commissions; but, within carefully circumscribed bounds to be fixed and determined by the proper tribunal, extra services of a fiduciary-lawyer may be taken into account in fixing his compensation under [*W.Va.Code*, 44–4–12 [1982]].

With regard to the action before this Court, it should be noted that hearings were held before the commissioner on August 14, 1981, and September 4, 1981. Transcripts of those hearings appear in the record before this Court. The record also contains copies of the appraisements, settlement reports and other exhibits concerning the estates of Claude Black and I.D. Black. As indicated above, the circuit court determined that Geary's executor commissions and fees charged by his law firm were proper with respect to the Claude Black and I.D. Black estates.

In this action, the commissions of James Paul Geary and Paul Black, plus the attorney fee, exceeded, with respect to both estates, the five percent standard of compensation described in *In Re: Estate of*

8. In *In Re: Estate of Gus Lapinsky, supra,* this Court cited with approval the following language from 21 Am.Jur. *Executors and Administrators* § 532 (1939):

> In the absence of statute, the general rule is that where a lawyer becomes executor or administrator, his compensation as such is in full for his services, although he exercises his professional skill therein; and even if he performs duties which he might properly have hired an attorney to perform, he is not entitled to attorney's fees.

148 W.Va. at 42–43, 132 S.E.2d at 769.

*Gus Lapinsky, supra.*[9] The commissioner took into consideration only the commissions and fees charged by Geary and not the commissions also charged against the estates by Paul Black. The commissioner acted improperly in that regard.

Although this Court does not find grounds for the removal of James Paul Geary and Paul Black as executors under the joint will, we do believe that, upon a careful examination of the record, no justification existed for the charging against the estates of the attorney fees in question. This Court therefore reverses the circuit court upon this issue and remands this action for the repayment of the attorney fees.

The charging of attorney fees in addition to commissions by fiduciary-attorneys has been considered in other jurisdictions prior to this action. *See* Annot., 65 A.L.R.2d 809, 811 (1959); 31 Am.Jur.2d *Executors and Administrators* § 500 (1967). Those authorities are in general agreement with our statements in *In Re: Estate of Gus Lapinsky* and *Tyler* to the effect that the charging of such attorney fees is discouraged.

Consequently, we emphasize that in the case of a decedent's estate, this Court does not look with favor upon the charging of compensation for legal services in addition to a commission by an attorney who is the executor or administrator of that estate. Where the executor or administrator of a decedent's estate is an attorney, compensation for legal services in addition to a commission may only be allowed within carefully circumscribed bounds and upon exceptional circumstances. The burden is upon the attorney to establish those exceptional circumstances by clear and convincing evidence.[10] No such exceptional circumstances were shown to exist in this action.

This Court affirms the recommendations of the commissioner, and ruling of the circuit court, with respect to the remaining accounting issues. This Court has carefully examined the testimony taken before the commissioner concerning possible accounting irregularities as well as the commissioner's 23-page report to the circuit court. The commissioner in that report made detailed findings of fact concerning both estates relating to the alleged irregularities. The details of those alleged irregularities need not be set forth in this opinion. Except for the issue concerning attorney fees, this Court has found nothing in the record sufficient to disturb the ruling of the circuit court, as reflected in its order dated November 16, 1981, that the executors "have fully accounted for all assets handled by them in both the I.D. Black Estate and Claude Black Estate and that there was no improper action on their part."

All other issues raised by the parties in this action are without merit.

Upon all of the above, the final orders of the Circuit Court of Pendleton County, West Virginia, are hereby affirmed in part, reversed in part and remanded with directions.

Affirmed in part; Reversed in part; Remanded with directions.

9. In the case of the estate of Claude Black, Paul Black received a $1,459.08 executor commission and James Paul Geary received a $1,459.07 executor commission. Those commissions were derived from a $58,362.92 figure representing certain items of property listed in the Claude Black appraisement. The $58,362.92 figure may also be found as representing total personal property upon the Claude Black West Virginia inheritance tax return. Geary's law firm received $1,000 in attorney fees with respect to the Claude Black estate.

In the case of the estate of I.D. Black, Paul Black received a $2,531.73 executor commission and James Paul Geary received a $2,531.73 executor commission. Those commissions were derived from a $101,269.33 figure representing certain items of property listed in the I.D. Black appraisement. The $101,269.33 figure may also be found as representing total personal property upon the I.D. Black West Virginia inheritance tax return. Geary's law firm received $2,500 in attorney fees with respect to the I.D. Black estate.

In the case of both estates, the two executor fees plus the legal fees are more than a five percent commission upon the $58,362.92 or $101,269.33 figures.

10. *See* 15A *Words and Phrases* 110 (1950), and its 1982 supplement for cases which considered the meaning of "exceptional circumstances."