446 S.E.2d 177

**Stella HUNTER, Administratrix of the Estate of Sharon Paula Dingess, Plaintiff Below, Appellant,**

v.

**William Woodrow CHRISTIAN and William A. Christian, Defendants Below, Appellees,**

and

**Lewis McCOY, Intervenor Below, Appellee,**

v.

**Stella HUNTER, Individually and as Administratrix of the Estate of Paula Dingess, Defendant Below, Appellant,**

**West Virginia Department of Health and Human Resources, Child Advocate Office, Intervenor.**

**No. 21895.**

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1994.

Decided June 16, 1994.

---

Peter A. Hendricks, Madison, for appellant Stella Hunter.

Henry E. Wood, III, Wood & Associates, L.C., for the intervenor below Lewis McCoy.

Amy K. Naegele, Asst. Gen. Counsel, Child Advocate Office, Charleston, for intervenor West Virginia Dept. of Health and Human Resources, Child Advocate Office.

PER CURIAM:

This is an appeal from the May 12, 1993, order of the Circuit Court of Logan County, West Virginia, which granted the appellee, Lewis McCoy, one-half of all net proceeds collected in the wrongful death action filed by the appellant, Stella Hunter, on behalf of the estate of Sharon Paula Dingess, when it was determined, after Sharon Dingess' death, that Mr. McCoy was her biological father. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the judgment of the circuit court is reversed.

I

On July 17, 1972, the appellant, Stella Hunter (then Stella Dingess), gave birth to the decedent, Sharon Paula Dingess. Ms. Hunter was then sixteen-years old, single and living at home. When Ms. Hunter asked the appellee, Lewis McCoy, to acknowledge that he was the father of Sharon, he refused. The relationship between Ms. Hunter and Mr. McCoy subsequently ended.[1]

---

1. Numerous affidavits executed by family and friends of Sharon Dingess and introduced below by Ms. Hunter allege that Mr. McCoy had no contact with Sharon during her minority. According to these affidavits, Mr. McCoy extended neither financial nor emotional support to his daughter during her life. When Sharon was eighteen years old, Mr. McCoy apparently attempted to establish a relationship with her, but she resisted. No other evidence of contact be-

On August 29, 1977, Ms. Hunter applied for Aid to Families with Dependent Children benefits from the West Virginia Department of Health and Human Resources (hereinafter "DHHR"), in order to support her dependent child. The DHHR subsequently asked Mr. McCoy to acknowledge paternity of Sharon Paula Dingess when it sent to him a paternity acknowledgement form, pursuant to Public Law 93–647, which required the West Virginia Office of Child Support Enforcement to seek establishment of paternity of children who are receiving public assistance from the state. Mr. McCoy failed to sign or return this form.

On July 18, 1980, Mr. McCoy appeared at the Logan County Welfare office where, according to the DHHR's narrative recording/data transmission log, he again denied that he was the father of Sharon Dingess. In 1980, the statute of limitations to establish paternity was three years from the birth of the child. *W.Va.Code*, 48–7–1 [1969].[2] In

tween Mr. McCoy and Sharon Dingess was taken below.

2. In 1980, *W.Va.Code*, 48–7–1 [1969] stated:
   Any unmarried woman may go before a justice of the county in which she resides and accuse any person of being the father of a bastard child of which she has been delivered. Such justice shall examine her under oath, and reduce her examination to writing and sign it. On such examination, unless the child be three years old or upwards, the justice shall issue a warrant, directed to the sheriff of, or a constable in, any county where the accused may be, requiring him to be apprehended and taken before a justice of the county in which he may be found[.]
   We note that in the case of *State ex rel. S.M.B. v. D.A.P.*, 168 W.Va. 455, 284 S.E.2d 912 (1981), this Court found the three-year statute of limitations to be unconstitutional. In 1983, our legislature subsequently enacted the Intrastate Support Act, *W.Va.Code*, 48–7–1 to 48–7–5. *W.Va. Code*, 48–7–4(a) provided a ten-year statute of limitations for paternity actions. That provision, along with the Intrastate Support Act, was repealed in 1986.
   In 1986, our legislature enacted § 48A–6–2: "(a) Except for an action brought by a child in his or her own right under the provisions of subdivision (6), subsection (a), section one of this article, an action for the establishment of the paternity of a child shall be brought prior to such child's eighteenth birthday." This statute was amended in 1989. *See* n. 6, *infra*.

3. Mr. McCoy also filed a declaratory judgment complaint and petition to remove Ms. Hunter as administratrix of the estate of her daughter.

that Sharon was, by 1980, seven years old, the three-year statute of limitations had already run. Thus, unless the statute was challenged, without Mr. McCoy's voluntary acknowledgement of paternity, nothing further could be done.

On January 23, 1992, when Sharon Dingess was nineteen years and six months old, she was killed in an automobile accident in Logan County. Sharon Dingess was unmarried, had no children, and died without a will. As administratrix of the estate of her daughter, Ms. Hunter filed a wrongful death action. During the pendency of that action, Mr. McCoy, who had previously denied that he was the father of Sharon Dingess, to avoid the legal obligation of paying child support and whose paternity had never been judicially determined, filed a motion to intervene,[3] alleging that, as Sharon's father, he was entitled to one-half of the net proceeds recovered in the wrongful death action.[4]

4. At the time of Sharon Dingess' death, the applicable provisions of our wrongful death act were *W.Va.Code*, 55–7–6(b) [1989], which governs the distribution of damages in a wrongful death action when tried by a jury or by a court without a jury, and *W.Va.Code*, 55–7–7 [1989], which relates to the distribution of a settlement of a wrongful death action and directs the proceeds to be distributed "in the same manner as in the cases tried without a jury."
   In *Arnold v. Turek*, 185 W.Va. 400, 407 S.E.2d 706 (1991), and *White v. Gosiene*, 187 W.Va. 576, 420 S.E.2d 567 (1992), this Court held that, the statute in effect on the date of the decedent's death will control and, pursuant to *W.Va.Code*, 55–7–6 and *W.Va.Code*, 55–7–7, as amended in 1989, the net proceeds of a wrongful death damage award are to be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution as set forth in *W.Va.Code*, 42–1–1, *et seq.*
   *W.Va.Code*, 42–1–1 [1957] provides, in part:
   When any person having title to any real estate of inheritance shall die intestate to such estate, it shall descend and pass in parcenary to his kindred, male and female, in the following course:
   . . . .
   (c) If there be no child, nor descendant of any child, nor wife, nor husband, then one moiety each to the mother and father[.]
   The statute of descent was subsequently amended. The new statute, which differs significantly from the one cited here, became effective June 5, 1992.
   For purposes of this case, *W.Va.Code*, 42–2–1 [1923], relating to distribution, provides that the

At a hearing concerning application of settlement of the wrongful death action, held on September 9, 1992, Ms. Hunter testified that either Mr. McCoy or Tony Belcher, the father of her oldest child, was the biological father of Sharon Dingess. In order to determine the distribution of the wrongful death proceeds, Ms. Hunter and Mr. McCoy agreed to submit to DNA testing,[5] to establish the paternity of Sharon Dingess. The results of the DNA testing established that the probability that Mr. McCoy was the biological father of Sharon Dingess was 99.93%.

Ms. Hunter subsequently sought to dismiss Mr. McCoy's claim to the wrongful death proceeds on the grounds that his claim was barred under *W.Va.Code*, 48A–6–2(a) [1989],[6] which provides that an action to establish the paternity of a child must be brought before the child reaches eighteen. In its opinion of April 16, 1993, granting Mr. McCoy's motion for summary judgment, the circuit court ruled that the statute of limitations contained in *W.Va.Code*, 48A–6–2(a) does not apply because this was not a proceeding to establish paternity, though the "parties *agreed* that one of the methods commonly used in paternity actions would be adopted to see if [Mr. McCoy] was to be excluded as the father of [Sharon Dingess]." (emphasis in original). The circuit court further held that, in that Mr. McCoy has been determined to be the biological father of Sharon Dingess, he is to share in one-half of the net proceeds of the wrongful death settlement, pursuant to the statute in effect at the time of Sharon's death.[7]

Ms. Hunter subsequently retained new counsel and moved to file an amended answer and permissive counterclaim and what is designated as a petition for reconsideration of the circuit court's decision, arguing the following: (1) that Mr. McCoy, who previously disavowed paternity of Sharon Dingess, should be equitably estopped from now asserting it; (2) that, should equitable estoppel not apply in this case, then Mr. McCoy's share of the wrongful death proceeds should be set off by reimbursement of child support; and (3) that the 1992 amendments [8] of the

---

personal estate of the decedent "shall pass and be distributed to and among the same persons, and in the same proportions, that real estate is directed to descend[.]" *W.Va.Code*, 42–2–1 was subsequently repealed by Acts 1992.

5. Medical testing procedures to aid in the determination of paternity are set forth in *W.Va.Code*, 48A–6–3.

6. *W.Va.Code*, 48A–6–2(a) [1989], the statute in effect on the date of Sharon Dingess' death, stated:

Except for an action brought by a child in his or her own right under the provisions of subdivision (6), subsection (a), section one [§ 48A–6–1(a)(6)] of this article, an action for the establishment of the paternity of a child shall be brought prior to such child's eighteenth birthday.

*W.Va.Code*, 48A–6–2 was amended again in 1993. The 1993 amendment substituted "a proceeding" for "an action," throughout; ·and in (a) substituted "(7)" for "(6)" and "(e)" for "(a)."

7. *See* n. 4, *supra*.

8. *W.Va.Code*, 55–7–6(b) [1992] provides:

(b) In every such action for wrongful death the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) of this section. If there are no such survivors, then the damages shall be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution as set forth in chapter forty-two [§ 42–1–1 et seq.] of this code. If the jury renders only a general verdict on damages and does not provide for the distribution thereof, the court shall distribute the damages in accordance with the provisions of this subsection.

*W.Va.Code*, 55–7–7 [1989] provides:

The personal representative of the deceased may compromise any claim to damages arising under section five [§ 55–7–5] of this article before or after action brought. What is received by the personal representative under the compromise shall be treated as if recovered by him in an action under the section last mentioned. When the judge acts in vacation, he shall return all the papers in the case, and orders made therein, to the clerk's office of such court. The clerk shall file the papers in his office as soon as received, and forthwith enter the order in the order book on the law side of the court. Such orders, and all the proceedings in vacation, shall have the same force and effect as if made or had in term.

wrongful death act should be applied retroactively.[9]

The circuit court denied Ms. Hunter's motion to amend and petition for reconsideration, and denied, without prejudice, her motion to file a permissive counterclaim for reimbursement child support. However, the circuit judge refused to escrow Mr. McCoy's share of the wrongful death proceeds pending resolution of the reimbursement issue.

## II

As we indicated above, one of the issues on appeal to this Court is that of equitable estoppel. In that Mr. McCoy previously denied to Ms. Hunter and to the DHHR the paternity of Sharon Dingess, Ms. Hunter contends that he should be equitably estopped from now asserting it for the sole purpose of collecting wrongful death proceeds. We agree and reiterate that "[t]he doctrine of estoppel should be applied cautiously and only when equity clearly requires it to be done." Syl. pt. 3, *Humble Oil & Refining Co. v. Lane*, 152 W.Va. 578, 165 S.E.2d 379 (1969). Indeed, if ever a case existed to which the doctrine of estoppel should be applied, this is it.[10]

This Court articulated the elements of equitable estoppel in syllabus point 6 of *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 92 S.E.2d 891 (1956):

> The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must

have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

In 1977 and again, in 1980, Mr. McCoy denied to both Ms. Hunter and the DHHR that he was the biological father of Sharon Dingess. Mr. McCoy's false representation that he was not Sharon's father enabled him to avoid the legal and moral responsibility of paying child support. Throughout Sharon's life, however, he was well aware that he was her father, as evidenced by his motion to intervene, filed almost immediately upon Sharon's death, and by his unsuccessful attempts to establish a relationship with her when she became an adult.[11]

Furthermore, in 1980, Ms. Hunter and the DHHR were without the means of knowledge of Sharon's paternity. As we noted above, the statute of limitations for bringing a paternity action at that time was three years from the birth of the child although that statute was ultimately determined to be unconstitutional. *W.Va.Code*, 48–7–1 [1969]. However, Mr. McCoy could have freely acknowledged paternity and provided financial support for his daughter. Instead, Mr. McCoy denied the paternity of Sharon Dingess with the intention that Ms. Hunter raise her without his assistance and with his finan-

---

> Upon approval of the compromise, the court shall apportion and distribute such damages, or the compromise agreed upon, after making provisions for those expenditures, if any, specified in subdivision (2), subsection (c), section six [§ 55–7–6(c)(2) ] of this article, in the same manner as in the cases tried without a jury.

9. These issues are currently being argued by Ms. Hunter before this Court. In addition, Ms. Hunter contends that the statute of limitations for establishing paternity, under *W.Va.Code*, 48A–6–2 [1989], bars Mr. McCoy's claim to the wrongful death proceeds.

10. Mr. McCoy contends that if equitable estoppel is to be applied here, this case should be remanded to the circuit court. We disagree. It is undis-

puted that Mr. McCoy disavowed paternity of Sharon Dingess in 1977 and 1980, as it was based on this disavowal that the DHHR awarded Ms. Hunter AFDC benefits to support her daughter. Since there is no dispute as to whether Mr. McCoy denied paternity in 1977 and 1980, no further evidence need be taken on the issue.

11. Mr. McCoy claims that he was reluctant to acknowledge paternity in 1980 not to avoid child support obligations, but rather, because he believed Sharon's father may have been Tony Belcher. Upon Sharon's death, however, Mr. McCoy was clearly anxious to acknowledge paternity and wasted no time in doing so.

cial responsibility being assumed by the State.[12]

A creature of equity, the doctrine of equitable estoppel is rooted in natural justice and good conscience. 7A Michie's Jurisprudence, Estoppel § 14. Therefore, for the reasons stated above, Mr. McCoy is equitably estopped from reaping the financial benefits of the death of his daughter, Sharon Dingess, when, during her life, he disavowed paternity in order to escape legal and financial responsibility to her. Accordingly, the judgment of the Circuit Court of Logan County is reversed.[13]

Reversed.

---

**12.** During Sharon's minority, Ms. Hunter received $22,874.00 in AFDC benefits.

**13.** In light of our resolution of this case, it is not necessary to address the remaining assignments of error.