490 S.E.2d 902

**In re the Petition of Kenneth B. SHI-FLETT for an Appeal From an Order of the Randolph County Commission Dated June 6, 1994.**

No. 23423.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 5, 1997.

Decided July 18, 1997.

Richard W. Cardot, Cardot Law Offices, Elkins, for Appellant.

Peter G. Zurbuch, Busch & Talbott, L.C., Elkins, for Appellee.

WORKMAN, Chief Justice:

Kenneth B. Shiflett, the petitioner below and Appellant herein (hereinafter Appellant), appeals the January 4, 1995 and July 27, 1995 orders of the Circuit Court of Randolph County. The January 4, 1995 order granted a motion in limine to exclude any evidence that Mary Herron Shiflett, the respondent below and Appellee herein (hereinafter Appellee), abandoned her husband, Kenzie Brent Shiflett, now deceased, and it permitted Appellee to elect against her husband's will and take an elective-share percentage of the augmented estate. In the July 27, 1995 order, the circuit court further determined that the property acquired by the testator prior to his marriage to Appellee should be included as part of the augmented estate.

On appeal, Appellant argues Appellee should be estopped from asserting a right to take an elective-share percentage of the estate because Appellee abandoned the testator approximately ten years before his death. Appellee also asserts that, if Appellee is entitled to an elective-share percentage of the estate, a constructive trust should be established for "those assets ... [the testator] acquired prior to the marriage or derived from assets ... [the testator] acquired prior to the marriage ..." to prevent Appellee from being unjustly enriched. For the following reasons, we affirm the circuit court's order entered on January 4, 1995, but reverse the order entered on July 27, 1995, and remand this case for further proceedings.

I.

FACTS IN CONJUNCTION WITH
STATUTORY CHANGES

Appellee married the testator on July 24, 1981. Appellant, who is the testator's son from a previous marriage,[1] alleges that Appellee abandoned his father after approxi-

---

1. Appellant's parents were divorced in 1971.

mately one and one-half years of marriage and the couple lived separate and apart for the remainder of his father's life.[2] The testator died on December 30, 1992, owning both real and personal property.[3]

By will executed on November 15, 1984, the testator left his entire estate to Appellant, except for a trailer and a clock which he bequeathed to Appellee. At the time the will was executed, the dower rights of a husband or wife were barred if the husband or wife voluntarily left or abandoned "his or her spouse without such cause as would entitle such husband or wife to a divorce ..., and without such cause and of his or her own free will be living separate and apart from such spouse at the time of the latter's death...." W. Va.Code § 43–1–19 (1982).[4] In addition, if the dower rights of either a husband or wife were barred "under any provision of law," neither the husband nor the wife could "have any part of the estate of the other, unless the same be given him or her by will and then only so much as is so given." W. Va.Code § 42–3–3 (1982).[5] In other words, if a husband or wife abandoned his or her spouse as contemplated by West Virginia Code § 43–1–19, there would be a forfeiture of rights to take any part of the estate, except what was bequeathed by the will.

In an attempt to prevent Appellee from taking any part of the estate except what was provided to her by the will, Appellant sought to admit evidence pertaining to her alleged abandonment of the testator. However, approximately nine months prior to the testator's death, the legislature passed sweeping statutory revisions to the descent and distribution provisions in the code, including the repeal of the abandonment provision contained within West Virginia Code § 43–1–19. 1992 W. Va. Acts ch. 75.[6] As a result of the abandonment provision being repealed, the circuit court found the issue to be irrelevant under the statutory law in effect at the time the testator's death. Therefore, the circuit court refused to permit Appellant to introduce any testimony pertaining to it.

At the same time the abandonment provision was repealed, West Virginia Code § 42–3–1 was amended. 1992 W. Va. Acts ch. 75.[7] When the testator died, West Virginia Code § 42–3–1 (Supp.1992) provided that a "surviving spouse"[8] could elect against a will and

---

**2.** Appellee denies Appellant's accusation of abandonment.

**3.** Appellant was named the Executor of the testator's estate.

**4.** West Virginia Code § 43–1–19 states in full:

If a husband or wife of his or her own free will leave his or her spouse and live in adultery and be not afterwards reconciled to, and live with, such spouse, or if a husband or wife shall voluntarily leave or abandon his or her spouse without such cause as would entitle such husband or wife to a divorce from the bond of matrimony or from bed and board, and without such cause and of his or her own free will be living separate and apart from such spouse at the time of the latter's death, such husband or wife shall be barred of dower in the estate of such spouse.

**5.** In full, West Virginia Code § 42–3–3, states:

The provisions of this chapter in favor of the husband and the wife are all subject to this qualification, that if the husband would be barred of his dower in the estate of his wife, or the widow be barred of her dower in the estate of her husband, under any provision of law, neither shall have any part of the estate of the other, unless the same be given him or her by will and then only so much as is so given.

**6.** "The estates of dower and curtsey [also were] ... abolished." W. Va.Code § 43–1–1 (Supp. 1992).

**7.** The revisions were passed on March 7, 1992 and took effect ninety days from passage. 1992 W. Va. Acts ch. 75. These revisions were modeled after the Revised Uniform Probate Code (1990). *Mongold v. Mayle,* 192 W.Va. 353, 355, 452 S.E.2d 444, 446 (1994). The general purpose behind adopting the elective-share statute was to prevent a husband or wife from disinheriting his or her spouse. *Id.* (citing generally John W. Fisher II & Scott A. Curnutte, *Reforming the Law of Intestate Succession and Elective Shares: New Solutions to Age–Old Problems,* 93 W. Va. L.Rev. 61, 98–115 (1990)). For additional information on the history and purpose of these revisions, see *Mongold* and the citations contained therein.

**8.** For purposes of descent and distribution, a "'surviving spouse' means the person to whom the descendent was married at the time of the decedent's death." W. Va.Code § 42–1–1(39) (Supp.1992). As the testator and Appellee never divorced, Appellee clearly fits within this definition. In 1995, changes were made to West Virginia Code § 42–1–1, but these changes did not effect the definition of a "surviving spouse."

take an "elective-share percentage of the augmented estate." W. Va.Code § 42–3–1(a). The percentage a surviving spouse was entitled to take was "determined by the length of time the spouse and the decedent were married to each other...." *Id.*[9] Pursuant to an accrual schedule in the statute, Appellee was awarded thirty-four percent of the augmented estate.[10]

Appellant claims the statutory revisions unjustly reward Appellee for her conduct and undermine his father's intent as expressed in his will. In addition, Appellant maintains his father was legally blind and in poor health at the time these statutory revisions took effect and his father died approximately six months thereafter. Consequently, Appellant asserts there was neither a reasonable opportunity nor a reasonable amount of time for his father to obtain a divorce to prevent Appellee from taking any part of the estate except what he intended to give her under the will. Therefore, Appellant argues this Court should apply the doctrine of equitable or quasi estoppel to prevent Appellee from receiving a statutory share of the augmented estate or, in the alternative, set up a constructive trust to prevent Appellee from being unjustly enriched.

■ Upon review of the statutory provisions, we decline to apply either of these measures. As the issues raised by Appellant involve purely questions of law, our review of this case is plenary and de novo. *See Gribben v. Kirk,* 195 W.Va. 488, 493, 466 S.E.2d 147, 152 (1995) (stating "[t]he issues present-

ed ... involve questions of law; therefore, our review is plenary and *de novo* ").

## II.

## DISCUSSION

### A.

#### A Surviving Spouse's Right to an Elective–Share

■ At the outset, the distinction between "construing" the language of a will and determining what "legal effect" a will shall have should be made. When construing a will, the goal normally is to ascertain the testator's intent. For instance, when a testator uses ambiguous words, courts may be asked to interpret the meaning of those words in order to derive the testator's intent. *See e.g. Foster v. Foster,* 196 W.Va. 341, 472 S.E.2d 678 (1996) (interpreting the language in a holographic will). On the other hand, when determining the "legal effect" of a will, the focus shifts to whether the will complies with the law, i.e., whether the will violates any positive rule of law or public policy. If a "testator attempts to make a disposition forbidden by law[,] it will not be effectuated ..." regardless of the testator's intent. *Weiss v. Soto,* 142 W.Va. 783, 791, 98 S.E.2d 727, 733 (1957).[11]

■ As tersely explained by this Court in *McCauley v. Henry,* 143 W.Va. 770, 105 S.E.2d 129 (1958), "[s]trictly speaking, the actual intention of a testator has nothing to

---

9. Prior to the 1992 amendment, West Virginia Code § 42–3–1 (1982), generally provided that a surviving spouse could renounce a provision in a will made in his or her favor and take such share of the deceased spouse's estate as "if the decedent had died intestate leaving children[.]" W. Va.Code § 42–3–1. In relevant part, the 1992 version of West Virginia Code § 42–3–1 stated:

> The *surviving spouse* of a decedent who dies domiciled in this state has a right of election, under the limitations and conditions stated in this part, to take an elective-share amount equal to the value of the elective-share percentage of the augmented estate, determined by the length of time the spouse and the decedent were married to each other....

W. Va.Code § 42–3–1(a) (emphasis added). This section was amended in 1993 and 1995. In part, the 1993 amendment added the phrase "against either the will or the intestate share"

after the word "election" in the first sentence of subsection (a). The 1995 amendment, in part, deleted the phrase "an elective-share amount equal to the value of the" preceding the phrase "elective-share percentage" in the first sentence of subsection (a). Other changes were made to this section in 1993 and 1995, but those changes are not relevant to the present case.

10. Appellee and the testator were married for more than eleven but less than twelve years when the testator died.

11. In syllabus point four of *Weiss,* we held: "The paramount rule in construing a will is that the intention of the testator controls and must be given effect, *unless the intention violates some positive rule of law or public policy.*" *Id.* (emphasis added).

do with the legal effect of his expressed intention ... [No matter how] clearly a testator may express his intention, the legal effect which shall and must be given to it by the courts is purely a question of law." 143 W.Va. at 776, 105 S.E.2d at 133 (citation omitted). For instance, in numerous cases a testator's intent is "defeated for the reason that the law did not permit that intention to be carried out," such as occurs when a will violates the rule against perpetuities. *Id.*

Thus, in the present case, we place no significance on Appellant's assertion that the revised legislation undermines his father's intent. The critical issue before this Court is not the intent of the testator.[12] Rather, the issue for this Court to resolve is what legal effect the testator's intent has, given the statutory changes.[13]

 In this light, we observe that it generally is held "the operative effect of the will and the rights of the parties thereunder are governed by the law in force when the rights of the parties accrue, which is ordinarily the law in existence at the time of the death of the testator." 95 C.J.S. *Wills* § 587(f) at 724 (1957)[14]; *accord McCauley v. Henry,* 143 W.Va. at 776, 105 S.E.2d at 133 (1958)[15]; *see also* Syl. Pt. 5, *Arnold v. Turek,*

185 W.Va. 400, 407 S.E.2d 706 (1991) ("Statutory changes in the manner and method of distributing the proceeds of a judgment or settlement for wrongful death will not be given retroactive effect, and the statute in effect on the date of the decedent's death will control."). On appeal, Appellant does not dispute that the statutory revisions were in effect at the time of his father's death but, instead, argues it would be inequitable to apply the law under the facts of this case. Essentially, Appellant is asking this Court to ignore the effective law and forfeit Appellee's rights pursuant to the repealed statutes.

 Given that our legislature specifically repealed the abandonment provision at the same time it amended West Virginia Code § 42-3-1 (permitting a surviving spouse to take an elective-share percentage of the augmented estate),[16] we cannot judicially engraft a modified form of the abandonment provision back into the code.[17] Instead, we follow the predominant rule that declares the issue of whether abandonment, or other types of misconduct, should result in a forfeiture of a surviving spouse's right to an estate is a determination best left to the legislature, not the courts.[18] As explained by

---

**12.** In simplistic terms, the testator's intent was to give the bulk of his estate to his son, while leaving a trailer and a clock to his wife.

**13.** It is established in West Virginia that "[a] will shall be construed, with reference to the estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." W. Va.Code 41-3-1 (1982).

**14.** On the other hand, "[i]n the absence of an intent to the contrary manifested in the will, the law in effect at the time of execution of the will governs the determination of the testator's intent...." 95 C.J.S. § 587(f) at 724. *See also* William J. Bowe & Douglas H. Parker, 4 *Page on Wills* § 30.26 at 165 (rev. ed 1961) (stating "a will speaks from the time of execution as to its meaning and from the death of testator as to its effect and operation").

**15.** Of course, one exception to this principle would be if "it is clear that the Legislature intended the statute to apply only to wills executed after its passage." *McCauley,* 143 W.Va. at 776, 105 S.E.2d at 133 (citations omitted). For example, West Virginia Code § 41-1-10 (1982) states, in part: "The validity and effect of wills executed prior to the time this Code becomes effective

[January 1, 1931] shall be determined by the laws of this State in force at the time of their execution." In *McCauley,* we relied upon this statute as an expression of legislative intent and held the legal effect of the will at issue was governed by the law at the time of execution, April 2, 1928. *Id.* at 775-76, 105 S.E.2d at 132. In the present case, however, we find no similar applicable expression of legislative intent; therefore, the law in effect on the date of death continues to control.

**16.** As an aside, we notice the legislature retained a statute qualifying homicide as a bar to the acquisition of an estate or insurance money. *See* W. Va.Code § 42-4-2 (1982).

**17.** Obviously, if the abandonment provision was ever resurrected by the legislature and adopted as a part of the current statutory scheme, it would be necessary to revise the language of the repealed version to eliminate the reference to dower. *See supra* note 4.

**18.** *See* 23 Am.Jur.2d *Descent and Distribution* § 129, at 855-56 (1983) (stating that without "a controlling statute, it is held generally that misconduct ... cannot exclude one from taking as a

the Alabama civil appellate court in *Pogue v. Pogue*, 434 So.2d 262 (Ala.Civ.App.1983):

> The great weight of authority is against any finding of an 'implied exception' to the descent and distribution statutes. In the absence of statutory provisions to the contrary, the fact a surviving spouse abandoned the deceased spouse does not bar the surviving spouse's right to inherit under descent and distribution.

434 So.2d at 264 (citations omitted). Moreover, as the issue is within "the plenary control of the state legislature and depends entirely upon the provisions of the statutes regardless of any other person's ideas or motions of right or wrong," it is irrelevant whether the inheritance statutes "comport with the court's or counsel's idea of justice, morality or natural right." *In re Scott's Estate*, 90 Cal.App.2d 21, 202 P.2d 357, 359 (1949).[19]

In an analogous situation, this Court reached the same result. In *White v. Gosiene*, 187 W.Va. 576, 420 S.E.2d 567 (1992), we were asked to decide whether a father, who abandoned his daughter, was entitled to share equally with the mother in a settlement reached for their daughter's wrongful death. 187 W.Va. at 578, 420 S.E.2d at 569. At the time the daughter died, there was no statute foreclosing a parent who abandoned a child from sharing in a wrongful death award. *Id.* at 585, 420 S.E.2d at 576. Therefore, we concluded in syllabus point five: "In the absence of a statute to the contrary, a parent who abandons a child is not precluded from recovering or sharing in a wrongful death recovery where the wrongful death act mandates distribution of damages recovered thereunder in accordance with the laws of intestate succession." Writing for the Court, the Honorable Thomas B. Miller, Justice, explained it is "loathe" for this Court "to interfere with the legislative determination as to those persons who should be entitled to the benefit of this statutorily created right of action, even where it results in injustice. Our role is to interpret the law, not to create it." *Id.* at 584, 420 S.E.2d at 575.[20]

surviving spouse ... [because to do so] would be to read into the statutes of descent and distribution an exception which they do not make, and [it] would be an encroachment on ... the legislature").

**19.** *See also United States v. McCarty*, 144 F.2d 341 (10th Cir.1944) (holding under Oklahoma law a husband who abandoned his wife and entered into a bigamous marriage with another woman was not estopped from claiming a share of his lawful wife's estate because statutory provisions are not governed by equitable considerations); *In re Torres' Estate*, 61 Nev. 156, 120 P.2d 816, 818 (1942) (stating "the great weight of authority is against ... [the] contention that ... [a husband] is barred by his misconduct from taking any part of the decedent's estate" and if the court would read an abandonment exception into the relevant statute, "it would be encroaching upon the field of the legislature"); *In re Zolessi's Will*, 154 Misc. 313, 277 N.Y.S. 137, 140–41 (1935) (determining "[t]he omission [of an abandonment provision] ... during the recent amendments of the laws affecting the distribution of a decedent's estate must be deemed intentional[ ] [and,] [e]ven were it the result of oversight or neglect, ... [the court has] no power to supply the omission or to remedy the effect of the neglect"). *Cox v. Cox*, 95 Okla. 14, 217 P. 493 (1923) (finding no statutory grounds to exclude wife, the court had no alternative but to apply the law as prescribed by the legislature and permit wife to participate in the estate of her husband—despite the fact that wife left her husband

after two months of marriage); E.L. Strobin, Annotation, *Abandonment, Desertion, or Refusal to Support on Part of Surviving Spouse as Affecting Marital Rights in Deceased Spouse's Estate*, 13 A.L.R.3d 446, 455–57 (1967).

**20.** It also was recognized in *Gosiene* that, while severe inequities may result from blindly applying the distribution statute, "nonetheless 'the legislature must have necessarily recognized that such inequities would occur under the statute. Thus, the trial court was, and this Court is, without the power to conform the statute to its conception of justice under the facts of this case.' " *Id.* (quoting *Crosby v. Corley*, 528 So.2d 1141, 1144 (Ala.1988)). Other jurisdictions have arrived at the same conclusion. *See Hotarek v. Benson*, 211 Conn. 121, 557 A.2d 1259, 1263 (1989) (declaring statutory change must come from the legislature and in the absence of a statute preventing a parent who has abandoned a minor child from inheriting, such parent is not barred from his or her rights under descent and distribution); *Brady v. Fitzgerald*, 229 Miss. 67, 90 So.2d 182, 184 (1956) (determining father who abandoned his son was not precluded under Arizona law from taking one-half of the judgment for the death of his son in Arizona); *Anderson v. Anderson*, 211 Tenn. 566, 366 S.W.2d 755, 756–57 (1963) (deciding that, without a statute to the contrary, a father who abandons a child is entitled to a distributive share of the money received for the wrongful killing of the child).

■ If Appellant's accusations against Appellee in this case are correct, we agree with Appellant that permitting Appellee to take an elective-share percentage of the augmented estate strikes the consciousness as being unjust. However, as is evident in the cases mentioned above, it is not the responsibility of the courts to legislate the rules of descent and distribution. Moreover, " '[a]t common law no degree of misconduct by the surviving spouse resulted in a forfeiture of his or her rights in the estate of the deceased spouse.' " *In re Estate of Kostick,* 514 Pa. 591, 526 A.2d 746, 747 (1987) (citation omitted). As spousal forfeiture is purely a creature of statute, this Court cannot impose a forfeiture without statutory authority.[21] Thus, we hold, in the absence of a statute to the contrary, abandonment will not bar a surviving spouse from exercising his or her right to take an elective-share percentage of an augmented estate pursuant to West Virginia Code § 42–3–1 (Supp.1992).

■ Notwithstanding, Appellant further argues "the doctrine of estoppel may 'operate to cut off a right or privilege conferred by statute....' " *Quoting* 28 Am.Jur.2d, *Estoppel and Waiver* § 34, at 639 (1966) (footnotes omitted). Therefore, even if Appellee has a statutory right to take an elective share, Appellant contends she should be barred by her prior actions. Before the doctrine of equitable estoppel can operate to cut off a statutory right, however, the essential elements of equitable estoppel must be present.[22] As to the elements of equitable estoppel, we have said:

> The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

Syl. Pt. 6, *Stuart v. Lake Washington Realty Corp.,* 141 W.Va. 627, 92 S.E.2d 891 (1956).[23] We find Appellee's conduct fails to establish these elements.[24]

■ Assuming Appellee's alleged conduct is true, the act of abandonment did not misrepresent or conceal anything from the testator. Certainly, the testator was fully aware his wife did not live with him. In addition, it is inconceivable that Appellee abandoned her husband with the intention he would not divorce her or that Appellee knew the legislature would pass sweeping statutory reforms nearly ten years later which would permit her to take as a surviving spouse despite her abandonment. As "courts cannot create estoppels where none have arisen from the act of the party sought to be estopped," [25] we will not apply the doctrine of equitable estoppel to this case.[26]

---

21. "Under common-law principles all rights, liabilities, penalties, forfeitures and offenses which are of purely statutory derivation and unknown to the common law are eliminated by the repeal of the statute which granted them, irrespective of the time of their accrual." 1A Norman J. Singer, Sutherland Stat. Const. § 23.33 at 424–25 (5th ed.1993) (footnote omitted).

22. *See* 31 C.J.S., *Estoppels and Waiver* § 73, at 448 (1996) ("There can be no estoppel if any of the requisite elements thereof are wanting. They are each of equal importance.").

23. In Syllabus point seven of *Stuart,* we also stated: "To raise an equitable estoppel there must be conduct, acts, language or silence amounting to a representation or a concealment of material facts." *Id.* These principles are well established in West Virginia. *See Jolynne Corp. v. Michels,* 191 W.Va. 406, 416, 446 S.E.2d 494,

504 (1994); Syl. Pt. 2, *Hunter v. Christian,* 191 W.Va. 390, 446 S.E.2d 177 (1994); *see also* Syl. Pt. 2, *Helmick v. Broll,* 150 W.Va. 285, 144 S.E.2d 779 (1965) ("It is essential to the application of the principles of equitable estoppel that the one claiming the benefit thereof establish that he relied, to his disadvantage or detriment, on the acts, conduct or representation of the one alleged to be estopped.").

24. As the requisite elements of estoppel are missing, this case is distinguishable from *Juran v. Epstein,* 23 Cal.App.4th 882, 28 Cal.Rptr.2d 588 (1994), cited by Appellant.

25. 31 C.J.S., *Estoppels and Waiver* § 73, at 448.

26. Likewise, we find the doctrine of quasi estoppel does not apply. Although we can find no cases in West Virginia specifically applying the

■ Moreover, the real basis of Appellant's complaint does not arise because of Appellee's actions. Instead, Appellant's objections are more accurately directed against the legislature for changing the law and bestowing Appellee with a statutorily-created right to elect against the testator's will. If the law had not changed, Appellee's actions, if proven, would have barred her from taking anything except the two items listed in the will. Under the law at the time of death, however, Appellee's alleged actions were no longer considered a bar. We will not usurp the legislature's power to designate those persons eligible to take under the elective-share statute by applying the doctrine of equitable estoppel for actions the legislature no longer considers a bar to taking an elective share.[27]

### B.

### The Augmented Estate

■ Appellant asserts this Court should set up a constructive trust to prevent Appellee from being unjustly enriched by those assets the testator owned prior to the marriage.[28] However, in the 1992 statutory revisions, the legislature set forth what assets are to be included in an augmented estate, and we adhere to those legislative mandates. *See* W. Va.Code § 42–3–2 (Supp. 1992) (setting forth the elements of an augmented estate). Although we decline to set up a constructive trust in favor of Appellant, we nevertheless find the circuit court erred as a matter of law in the manner it applied West Virginia Code § 42–3–2 to the joint tenancy property.

■ In its order entered on July 27, 1995, the circuit court correctly indicated the augmented estate includes "[t]he value of the decedent's probate estate....," which consists of "property, whether real or personal, movable or immovable, wherever situated, that would pass by intestate succession if the decedent died without a valid will." W. Va. Code § 42–3–2(b)(1)[29]; W. Va.Code § 42–3–2(a)(1)(iv). The circuit court then found that, because "the Decedent's property acquired before his marriage would pass by intestate succession under West Virginia Code section 42–1–2(a) (Supp.1995), if the decedent died without a valid will, that property should also be included in the Decedent's probate estate

doctrine of quasi estoppel, it is said to operate to "preclude[ ] a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him." 31 C.J.S. *Estoppel and Waiver* § 120, at 543. The basis of this doctrine is "in election, waiver, ratification, affirmance, acquiescence, or acceptance of benefits...." *Id.* Given that abandonment no longer qualifies as a statutory bar, there is no evidence in this case that Appellee elected, waived, ratified, affirmed, acquiesced, or accepted any benefits contrary to her statutory rights.

27. For these same reasons, Appellant's allegations that the testator was in poor health when the law was revised cannot estop Appellee from asserting her rights under the elective-share provision. Contrary to Appellant's contention, we also mention that the testator did not need to divorce Appellee to prevent her from asserting her statutory rights upon his death. Appellee's rights could have been waived by "a complete property settlement entered into after or in anticipation of separation or divorce...." W. Va. Code § 42–3–3a (Supp.1992). West Virginia Code § 42–3–3a provides, in part:
(a) The right of election of a surviving spouse and the rights of the surviving spouse to homestead exemption, exempt property, or any of them, may be waived ... by a written contract, agreement, or waiver signed by the surviving spouse.
. . . .
(d) Unless it provides to the contrary, a waiver of "all rights" ... in the property or estate of a present ... spouse or a complete property settlement entered into after or in anticipation of separation or divorce is a waiver of all rights of elective share, homestead allowance, and exempt property by each spouse in the property of the other and renunciation by each of all benefits that would otherwise pass to him or her from the other by intestate succession or by virtue of any will executed before the waiver or property settlement.
W. Va.Code § 42–3–3a. This section was amended in 1993.

28. "A constructive trust is an implied trust and arises by operation of law when equity so demands." *Province v. Province*, 196 W.Va. 473, 482 n. 17, 473 S.E.2d 894, 903 n. 17 (1996).

29. In full, West Virginia Code § 42–3–2(b)(1) provides: "(1) The value of the decedent's probate estate, reduced by funeral and administrative expenses, homestead exemption, property exemption, and enforceable claims[.]"

under section 42–3–2(a)(1)(iv) (Supp.1995)."[30] The circuit court included among the assets of the augmented estate certain monies and certificates of deposit (hereinafter CDs) held by Appellant and his father as joint tenancy property. Appellant states that some of the CDs were titled jointly in his and his father's name prior to his father's marriage to Appellee and other CDs were purchased and titled jointly in his and his father's name during the course of the marriage. It also appears from the record that a savings account was titled jointly in both Appellant and his father's name.

Contrary to the circuit court's findings that all assets should be included as part the "probate estate," West Virginia Code § 42–3–2(b) and (d) (Supp.1992) clearly treat separately those assets which were held jointly with a right of a survivorship with someone other than the surviving spouse. As the circuit court did not address in its order the impact these provisions would have on the various joint tenancy property and these issues are not adequately briefed by the parties on appeal, it is necessary for us to remand this issue for further consideration.[31] Indeed, it may be necessary for the circuit court to hold an additional evidentiary hearing in order to determine precisely (1) what assets the testator and Appellant held as joint tenancy property, (2) when those assets were acquired, and (3) what amount, if any, of those assets should be included as part of

**30.** Throughout the circuit court's order, we notice the 1995 supplement is referenced. However, West Virginia Code § 42–3–2 was amended in 1993 and amended significantly in 1995. In calculating the augmented estate, it is critical to use the correct version of the provision. In this case, the 1992 version applies.

**31.** By way of assistance, but not limitation, we specifically direct the circuit court's attention to the 1992 version of West Virginia Code § 42–3–2(b) and (d) which state, in part:

(b) The augmented estate consists of the sum of:

. . . .

(2) The value of the decedent's reclaimable estate. The decedent's reclaimable estate is composed of all property, whether real or personal, movable or immovable, wherever situated, not included in the decedent and any other person, except the decedent's probate estate, of any of the following types:

. . . .

(ii) Property, to the extent of the decedent's unilaterally severable interest therein, held by the decedent and any other person, except the decedent's surviving spouse, with right of survivorship, acquired during the marriage of the decedent and the surviving spouse, if the decedent held that interest immediately before his or her death or if and to the extent the decedent, while married to his or her surviving spouse and during the two-year period preceding the decedent's death, transferred that interest to any person other than the decedent's surviving spouse;

. . . .

(iv) Property transferred by the decedent to any person other than a bona fide purchaser at any time during the decedent's marriage to the surviving spouse, to or for the benefit of any person, other than the decedent's surviving spouse, if the transfer is of any of the following types:

. . . .

(C) Any transfer of property, to the extent the decedent's contribution to it, as a percentage of the whole, was made within two years before the decedent's death, by which the property is held, at the time of or during the two-year period next preceding the decedent's death, by the decedent and another, other than the decedent's surviving spouse, with right of survivorship;

. . . .

(d) Property is valued as of the decedent's death, but property irrevocably transferred during the two-year period next preceding the decedent's death which is included in the decedent's reclaimable estate under subsection (b)(2)(i), (ii), and (iv) is valued as of the time of the transfer. If the terms of more than one of the subparagraphs or sub-subparagraphs of subsection (b)(2) apply, the property is included in the augmented estate under the subparagraph or sub-subparagraphs that yields the highest value. For the purposes of this subsection, an "irrevocable transfer of property" includes an irrevocable exercise or release of a power of appointment.

W.Va.Code § 42–3–2(b) and (d); *see also* John W. Fisher II, *Statutory Reform Revisited: Toward a Comprehensive Understanding of the New Law of Intestate Succession and Elective Share*, 96 W. Va. L.Rev. 85, 101 (1993) (reporting "[t]he example provided to the House Judiciary Committee to illustrate the purpose" behind West Virginia Code § 42–3–2(b)(2)(ii)); Patricia J. Roberts, *The 1990 Uniform Probate Code's Elective–Share Provisions—West Virginia's Enactment Paves the Way*, 95 W. Va. L.Rev. 55 (1992) (providing numerous illustrations of how to calculate an augmented estate); *see generally* W. Va.Code § 31A–4–33 (Supp.1992) (addressing joint deposit accounts); John W. Fisher II, *Joint Tenancy in West Virginia: A Progressive Court Looks at Traditional Property Rights*, 91 W. Va. L.Rev. 267 (1988–89) (discussing history of joint tenancy in West Virginia).

the augmented estate under the relevant statutory provisions.[32]

## III.

## CONCLUSION

For the foregoing reasons, we conclude Appellee has the right to take an elective-share percentage of the augmented estate pursuant to West Virginia Code § 42–3–1. However, we find under West Virginia Code § 42–3–2 additional consideration must be given to the joint tenancy property held by the testator and Appellant. Therefore, we remand this case for further proceedings on this issue.

Affirmed, in part, reversed, in part, and remanded.

---

**32.** We notice the circuit court held a hearing on December 16, 1994, at which time the issue of pre-marital assets was discussed to some extent.