**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2058

PATRICIA A. BAKER,

          Defendant – Appellant,

v.

JESSICA E. BAKER, Individually, and as Administratrix of The ESTATE OF
FRANK J. BAKER, JR.,

          Defendant – Appellee,

and

JACKSON NATIONAL LIFE INSURANCE COMPANY,

          Plaintiff.

Appeal from the United States District Court for the Northern District of West Virginia at
Wheeling.  Frederick P. Stamp, Jr., Senior District Judge.  (5:17-cv-00078-FPS)

Argued:  October 29, 2019                          Decided:  December 11, 2019

Before HARRIS, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Reversed and remanded with instructions by unpublished opinion. Judge Quattlebaum
wrote the opinion, in which Judge Harris and Judge Richardson joined.

**ARGUED:** Joseph Jacob John, II, JOHN & WERNER LAW OFFICES, PLLC, Wheeling, West Virginia, for Appellant. Christian Edward Turak, GOLD, KHOUREY & TURAK, L.C., Moundsville, West Virginia, for Appellee. **ON BRIEF:** Anthony I. Werner, JOHN & WERNER LAW OFFICES, PLLC, Wheeling, West Virginia, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

The question presented by this appeal is whether the designated beneficiary on a life insurance policy waived her interest in the policy proceeds by the terms of a divorce property settlement agreement. Patricia Baker was the designated beneficiary on the life insurance policy of her husband, Frank Baker, Jr. When the couple divorced, they executed a property settlement agreement ("PSA") to resolve "all matters concerning their respective separate and marital property rights . . . ." (J.A. 57). In Paragraph 5(b) of the PSA, Patricia relinquished "any and all right to any life insurance policies" on Frank's life. (J.A. 58). However, that subsection also provided that Frank "may change the beneficiary" on any such policy. (J.A. 58). Several years after the divorce, Frank died without changing the beneficiary designations on the life insurance policy.

As the policy's designated beneficiary, Patricia sought payment of the policy proceeds. However, Jessica Baker, Frank's daughter and a contingent beneficiary on his policy, made her own claim to the proceeds. Jessica argued that Patricia's relinquishment of "any and all right" to Frank's life insurance policy in the PSA waived her interest in the policy proceeds. In the ensuing litigation, the district court agreed with Jessica and granted her motion for summary judgment. It held that Patricia explicitly relinquished "any and all right" to Frank's life insurance policy, including her interest in the policy proceeds, by executing the PSA. (J.A. 215).

Upon review, we conclude that the PSA is reasonably susceptible to multiple interpretations and is therefore ambiguous as to whether Patricia waived her beneficiary interest in the policy proceeds. For this reason, we reverse the judgment of the district court

3

and remand for a determination of whether the PSA's ambiguity means that Patricia did not waive her contractual right to the policy proceeds or whether extrinsic evidence should be considered to establish the proper interpretation of the PSA.

I.

In July 1998, Frank enrolled in a $250,000 life insurance policy with what is now Jackson National Life Insurance Company ("Jackson National"). On the application, Frank named his wife, Patricia, as the designated beneficiary and his daughter from a prior marriage, Jessica, as a contingent beneficiary.[1] The terms concerning the beneficiaries of policy proceeds are clear. Under § 4.11 of the policy, the designated beneficiary receives the policy proceeds at the time of Frank's death, and any contingent beneficiaries receive the proceeds in the absence of a designated beneficiary. Section 3.35 only allowed Frank to change the policy's beneficiary designations by sending a written notice of the change to Jackson National.

Frank and Patricia divorced in September 2013, citing irreconcilable differences. As part of the divorce proceedings, Frank and Patricia executed a PSA to settle "all matters concerning their respective separate and marital property rights. . . ." (J.A. 57). The PSA was ratified and incorporated into the Final Divorce Order issued by the West Virginia family court. Paragraph 5 of the PSA, entitled "Life Insurance," provides in subsection (b):

---

[1] While extrinsic evidence in the record describes the nature of Frank's relationships with Patricia and Jessica, it is not relevant to our decision, so we need not recount it here.

"Wife hereby releases and relinquishes any and all right to any life insurance policies which the Husband presently has on his life and Husband may change the beneficiary." (J.A. 58). Additionally, in Paragraph 13(a) of the PSA, Frank and Patricia agreed to "execute, acknowledge and deliver any and all papers, documents, instruments and writing that may be reasonably required to effectuate the objects and purposes of this Agreement." (J.A. 60).

Frank died in January 2017. During the three-and-a-half-year period between the divorce and his death, Frank did not change the primary or contingent beneficiary designations on his life insurance policy. Because his life insurance policy was in effect on the date of his death, Jackson National sought to distribute the proceeds pursuant to the policy terms. However, the insurance company received competing claims to the proceeds. A few weeks after Frank's death, Patricia sent a letter to Jackson National requesting payment of the proceeds pursuant to her status as the policy's designated beneficiary. Later, Jessica also sent a letter to Jackson National. She argued that by the unambiguous terms of the PSA, Patricia relinquished her beneficiary interest in the policy proceeds and, as the only living contingent beneficiary,[2] Jessica was entitled to her share of the proceeds.

Because of these competing claims, Jackson National initiated an interpleader action in the United States District Court for the Northern District of West Virginia, naming Patricia and Jessica as defendants. The district court agreed to accept a deposit of the

---

[2] The only other contingent beneficiary was Frank's sister, Beth Salatino. But because Beth predeceased Frank, her share of the proceeds flowed to Frank Baker's estate under § 3.34 of the policy.

5

disputed proceeds from Frank's life insurance policy while Patricia and Jessica's claims were resolved.

After discovery, Patricia moved for summary judgment, seeking the policy proceeds as a matter of law. Two days later, Jessica moved for the same. The district court granted Jessica's motion, denied Patricia's motion and ordered payment of the policy proceeds to Jessica. The court held that by the unambiguous terms of Paragraph 5(b) of the PSA, Patricia "explicitly released and relinquished . . . 'any and all right to any life insurance policies' held by [Frank] and that such language plainly indicates the intent of the parties to eliminate her interest in the life insurance policy proceeds." (J.A. 215). Patricia timely appealed the final judgment. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## II.

This Court reviews grants of summary judgment de novo, applying the same standard as the court below. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 817 (4th Cir. 1995). Summary judgment may only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Covol Fuels No. 4, LLC v. Pinnacle Min. Co., LLC*, 785 F.3d 104, 111 (4th Cir. 2015) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312–13 (4th Cir.2013)). The threshold question for a court asked to grant summary judgment based on the interpretation of a contract is whether the contract is ambiguous. *Covol Fuels No. 4, LLC*, 785 F.3d at 112 (citing Syl. Pt. 4, *Estate of Tawney v. Columbia Natural Res., LLC*, 633 S.E.2d 22, 23–24 (W. Va. 2006)). "If a

6

court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (quoting *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993)). However, if the contract is deemed ambiguous, a court may "examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis." *Id.* But if such extrinsic evidence "leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Id.*

A.

With these standards in mind, we turn to the relevant West Virginia law.[3] As the designated beneficiary on Frank's life insurance policy, Patricia had a contractual right to the policy proceeds upon Frank's death. In West Virginia, there is no statute that automatically revokes a beneficiary interest in an ex-spouse's life insurance policy upon divorce,[4] and the parties agree that Frank did not change the beneficiary designations on

---

[3] It is not disputed that West Virginia law applies to the parties' claims.

[4] The West Virginia Supreme Court of Appeals has stated, "spousal forfeiture is purely a creature of statute," and therefore courts "cannot impose a forfeiture without statutory authority." *Petition of Shiflett*, 490 S.E.2d 902, 909 (W. Va. 1992). While W. Va. Code § 41-1-6 provides for the automatic revocation of a party's interests in their former (Continued)

7

his life insurance policy before his death. Therefore, Patricia retained her beneficiary interest in the policy proceeds unless she waived it by the terms of the PSA.[5]

Under West Virginia law, "[w]aiver of a contract right may be made by an express statement or agreement, or it may be implied from the conduct of the party who is alleged to have waived a right." *Parsons v. Halliburton Energy Servs., Inc*., 785 S.E.2d 844, 850 (W. Va. 2016). "The burden of proof to establish waiver is on the party claiming the benefit of such waiver, and is never presumed." *Hoffman v. Wheeling Sav. & Loan Ass'n*, 57 S.E.2d 725, 735 (W. Va. 1950). Here, Jessica contends that the execution of the PSA was an express waiver of Patricia's right to the life insurance proceeds as the designated beneficiary.

The West Virginia Supreme Court of Appeals "has long recognized that settlement agreements are contracts and subject to enforcement like any other contract." *Marcus v. Staubs*, 736 S.E.2d 360, 374 (W. Va. 2012). Accordingly, we analyze the terms of the PSA under West Virginia contract law to determine if Patricia waived her beneficiary interest in the proceeds of Frank's life insurance policy. When interpreting a contract, courts must consider the writing as a whole. *Zimmerer v. Romano*, 679 S.E.2d 601, 610 (W. Va. 2009). When the language is clear and unambiguous, courts must apply, not construe, the terms

---

spouse's will following a divorce, there is no automatic revocation statute for a former spouse's interests in life insurance policies and other non-probate assets.

[5] "It is generally true that divorce alone does not automatically divest the wife of the proceeds of life insurance in which she is the named beneficiary. The beneficiary's interest may be terminated, however, by an agreement between the parties which may reasonably be construed as a relinquishment of the spouse's rights to the insurance." *O'Brien v. Elder*, 250 F.2d 275, 278 (5th Cir. 1957) (internal citations omitted).

8

of the contract. *Cabot Oil & Gas Corp. v. Huffman*, 705 S.E.2d 806, 814 (W. Va. 2010). Therefore, if a contract is unambiguous, no extrinsic evidence may be considered to explain or alter its terms. *Zimmerer*, 679 S.E.2d at 610 (internal citations omitted).

However, when a contract is ambiguous, a court looks to extrinsic evidence of the parties' intent to construe it. *Harrell v. Cain*, 832 S.E.2d 120, 130 (W. Va. 2019). Contractual language is considered ambiguous if the terms "are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 468 S.E.2d 712, 716 (W. Va. 1996). However, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous." *Id.* at 717 (quoting Syl. Pt. 1, *International Nickel Co., Inc. v. Commonwealth Gas Corp.*, 163 S.E.2d 677, 678 (W. Va. 1968)). Finally, no word or clause in a contract may treated as a redundancy and must be presumed to have its own unique meaning. *Columbia Gas Transmission Corp.* v. *E. I. du Pont de Nemours & Co.*, 217 S.E.2d 919, 927 (W. Va. 1975).

B.

On appeal, Patricia first argues that the district court erred in holding that Paragraph 5(b) of the PSA waived her beneficiary interest in the policy proceeds. She claims that her relinquishment of "any and all right" to Frank's life insurance policy only waived her ownership rights in the policy—specifically, her claim to the cash surrender value of the policy and control over Frank's beneficiary designations—and not her beneficiary interest in the policy proceeds.

Patricia also argues that under the PSA, she relinquished "any and all *right*" to Frank's policy, and not "all right, title and *interest*" or "any and all *interests*" in the proceeds. She claims that the absence of such language means that the narrow waiver of her ownership *rights* in the policy cannot be broadly construed to also forfeit her separate beneficiary *interest* in its proceeds.

Finally, Patricia argues the inclusion of the phrase "and Husband may change the beneficiary" indicates that the PSA did not itself extinguish her beneficiary interest, as it unambiguously left Frank the power to change the policy's beneficiary designation. As a result, she claims that his decision not to remove her as the designated beneficiary after the execution of the PSA should be honored. In support of this reading, Patricia points to Paragraph 13(a) of the PSA. In that provision, the parties agreed to execute and deliver all instruments "that may be reasonably required to effectuate the objects and purposes of this Agreement." (J.A. 60). According to Patricia, if the PSA waived her beneficiary interest in the policy proceeds, Frank would have sent Jackson National written notice of the beneficiary change, as required under § 3.31 of the policy. However, Frank never attempted to send any such notice during the three-and-a-half-year period between the divorce and his death. She claims that his failure to do so is proof that her beneficiary interest was not waived by the PSA.

In response, Jessica largely echoes the reasoning of the district court. She argues Patricia's relinquishment of "any and all right" to Frank's life insurance policy unambiguously included a waiver of her interest in the policy proceeds. In support of this reading, Jessica asserts that other PSA provisions confirm that the agreement was intended

10

to be a comprehensive settlement of all of the parties' property rights and interests, including their respective beneficiary interests. Specifically, Jessica emphasizes the PSA's introduction, which states that the "parties desire to settle by agreement all matters concerning their respective separate and marital property rights . . . ." (J.A. 57).

Like the district court, Jessica cites *Graham v. Graham*, 465 S.E.2d 614, 616–17 (W.Va. 1995) for the proposition that a beneficiary interest in a life insurance policy is marital property in West Virginia.[6] Because Patricia's beneficiary interest in Frank's policy is marital property, she contends that it is covered by the PSA. And since the PSA is meant to settle "all matters" concerning Frank and Patricia's marital property rights, Jessica argues that Patricia's relinquishment of "any and all right" to Frank's life insurance policy necessarily waives her beneficiary interest in the proceeds.

Finally, Jessica asserts that the inclusion of the phrase "and Husband may change the beneficiary" does not indicate that the PSA left Frank the choice as to whether to maintain Patricia as the designated beneficiary or to remove her and name a new one. Instead, she claims that the phrase merely clarified that the PSA did not bar Frank from changing the beneficiary designation on his policy during the divorce proceedings.

---

[6] In *Graham*, the West Virginia Supreme Court of Appeals stated that "given the broad legislative definition of marital property, several types of expectancies, or near expectancies, with little or no present value, are marital property for equitable distribution purposes." *Graham*, 465 S.E.2d at 616–17. There, it found "that a term life insurance policy obtained as an employment benefit during the marriage is marital property under W.Va. Code 48-2-1(e)(1)." *Id*. at 618. The court also noted, in dicta, that other jurisdictions have found that life insurance policies are marital property if the policy premiums are paid with marital funds instead of separate funds. *Id*. at 617.

C.

While the district court did not address the inclusion of the phrase "and Husband my change the beneficiary" in Paragraph 5(b), the PSA must be interpreted as a whole. *See Zimmerer*, 679 S.E.2d at 610. When Paragraph 5(b)'s two constituent phrases are read together, they undermine the conclusion that the PSA unambiguously supports Jessica's claim to the policy proceeds. Instead, they make the PSA ambiguous as to whether Patricia waived her beneficiary interest in the policy proceeds.

Although Jessica asks this Court to read Patricia's relinquishment of "any and all right to any life insurance policies" as encompassing a waiver of her beneficiary interest in the policy proceeds, this interpretation risks rendering the phrase "and Husband may change the beneficiary" redundant. If the former phrase removed Patricia as the designated beneficiary, it seems unnecessary to also say that Frank can *change* the beneficiary of his policy.[7] It would be more logical to say that Frank "may name a new beneficiary" or simply remain silent on this issue. While it could be argued that this phrase simply allows Frank to change the beneficiary designation on his policy following Patricia's relinquishment of her right to the policy and its proceeds, the terms of the PSA—even according to Jessica— did not affect Frank's power to change the beneficiary designations. (J.A. 32). Therefore, we should not read Paragraph 5(b) to change whatever power Frank otherwise had.

---

[7] Webster defines "change" as "to make different in some particular" or "to replace with another." *Merriam-Webster's Collegiate Dictionary* 206 (11th ed. 2020). Therefore, the phrase "and Husband may change the beneficiary" presupposes that Patricia is still the beneficiary, as it allows Frank to replace her with a different beneficiary.

12

Moreover, Jessica's claim that the phrase "and Husband may change the beneficiary" merely allowed Frank to change the beneficiary designations during the divorce proceedings is contradicted by the terms and purpose of the PSA. The PSA was incorporated into the parties' Final Divorce Order at *the end* of the divorce proceedings and conclusively settled "all matters concerning [Frank and Patricia's] respective separate and marital property rights . . . ." (J.A. 54, 57). It cannot be credibly claimed that the phrase "and Husband may change the beneficiary" only applied during the divorce proceedings while the rest of the PSA continues to bind the parties. The text of the PSA does not support that reading, and finding otherwise would wrongly render "and Husband may change the beneficiary" meaningless once the divorce was final.

Therefore, under Jessica's arguments, the inclusion of phrase "and Husband may change the beneficiary" in Paragraph 5(b) is either redundant or meaningless. We decline to adopt such an interpretation, as it conflicts with the well-settled rule that every word or clause in a contract must be treated as having its own unique meaning. *Columbia Gas Transmission Corp.*, 217 S.E.2d at 927; *see also Goodman*, 7 F.3d at 1127 ("Contract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage.").

A writing is considered ambiguous if a contract's terms are inconsistent on their face or the agreement is reasonably susceptible to more than one meaning. *Fraternal Order of Police, Lodge No. 69*, 468 S.E.2d at 716. Here, Paragraph 5(b) of the PSA states that Patricia "relinquishes any and all right" to Frank's life insurance policy *and* that "[Frank] may change the beneficiary" on that policy. (J.A. 58). When these phrases are read

13

together, they leave Paragraph 5(b) reasonably susceptible to more than one interpretation. They could mean that Patricia waived her beneficiary interest in the policy proceeds, and Frank may therefore change the policy's beneficiary designations. However, they could also mean that Patricia only waived her ownership rights in the policy, but Frank may later remove her as the policy's designated beneficiary. The PSA is therefore ambiguous as to whether Patricia waived her beneficiary interest in the proceeds of Frank's life insurance policy.

D.

The remaining question is the effect of the PSA's ambiguity on Patricia's right to the policy proceeds. Does it mean that Patricia prevails since she did not unambiguously waive her contractual right to the policy proceeds? Or does it mean that extrinsic evidence should be considered to determine the proper interpretation of the PSA? Since this matter was not specifically briefed, we feel that the best approach is to remand this case to the district court with instructions to address this issue.

III.

For the reasons set forth above, we conclude, as a matter of law, that the PSA is ambiguous regarding whether Patricia waived her beneficiary interest in the proceeds of Frank's life insurance policy. We therefore reverse the judgment of the district court and remand for a determination of whether the PSA's ambiguity means that Patricia did not waive her contractual right to the policy proceeds, or whether extrinsic evidence should be

14

considered to establish the proper interpretation of the PSA. The district court's judgment

is

*REVERSED AND REMANDED WITH INSTRUCTIONS.*